**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| NEDRICK J. HARDY, SR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 10-cv-5921 |
| v. | ) | |
| | ) | |
| MARCUS HARDY, et al., | ) | Judge Thomas M. Durkin |
| | ) | |
| Defendants. | ) | |

**MOTION TO STRIKE DR. JOSH ALPERT'S EXPERT REPORT**

NOW COMES, Defendants, WEXFORD HEALTH SOURCES, INC. (hereinafter "Wexford") and DR. PARTHA GHOSH (hereinafter "Dr. Ghosh") (collectively the "Wexford Defendants"), by and through their undersigned counsel, move to strike Plaintiff's expert report, and in support state:

**I.     INTRODUCTION**

1. Plaintiff Nedrick J. Hardy, Sr., has sued the Wexford Defendants for medical care that Dr. Ghosh provided him as a prisoner at the Illinois Department of Corrections Stateville prison  The Second Amended Complaint contains three counts:  Count I is a claim of deliberate indifference pursuant to 42 U.S.C. § 1983; Count II is a retaliation claim against Defendant Dr. Charles Downs; and Count III is a state law claim of intentional infliction of emotional distress.

2.     This Motion relates to certain allegations raised in Count I.  Plaintiff retained Dr. Josh Alpert (hereinafter "Dr. Alpert") who prepared an expert report which criticizes the medical treatment of Plaintiff in regard to:  (1) a injury to Plaintiff's right pinky finger; (2) a injury to Plaintiff's wrist and elbow; and 3) Plaintiff's allegedly chronic back pain.  As to these issues, Dr. Alpert opines that Dr. Partha Ghosh and Wexford Health Sources, Inc. ("Wexford") "failed to provide adequate treatment."  Exhibit A, Alpert Report, pp. 4.

3. This Court should strike Dr. Alpert's Report because his opinions do not address the constitutional standards which apply to Plaintiff's Eighth Amendment claim which requires Plaintiff to prove that the Wexford Defendants acted with "deliberate indifference" to Plaintiff's injuries. Instead, Dr. Alpert's report is limited to suggesting that Dr. Ghosh committed *malpractice*. It is well established that *a finding of malpractice* does not establish deliberate indifference. Although Dr. Alpert's opinions would be relevant if Plaintiff had brought a state law malpractice claim, Plaintiff has only filed a claim for deliberate indifference. *See* Count I.

4. Additionally, even if Dr. Alpert's report set forth a claim for deliberate indifference (it does not), it should be stricken because his opinions are improperly focus on the specialized level of care that board certified specialist in orthopedics may have used to treat Plaintiff. While Dr. Albert is a board certified orthopedic surgeon, Dr. Ghosh is not. Accordingly, the proper standard to apply is one which looks at whether Dr. Ghosh, as a general practitioner, properly responded to Plaintiff's various injuries. Dr. Alpert's report does not analyze the facts in terms of what a general practitioner should have done when presented with Plaintiff's injuries. Moreover, nothing in his report which states that a general practitioner would have treated Plaintiff any differently.

5. Dr. Alpert's report should also be stricken because it improperly blames Dr. Ghosh for the alleged failure to obtain certain *prescribed treatments* (a wrist brace and physical therapy) in a timely manner. There are no facts in the record which can attribute these delays to Dr. Ghosh and there are no facts which suggest that Dr. Ghosh was made aware of these delays. Accordingly, there is no basis in fact for Dr. Alpert to opine that Dr. Ghosh knew of, and is otherwise responsible, for these alleged delays. At the very least, all claims of delayed treatment should be stricken from the report. Alternatively, Dr. Alpert's report should be stricken to the

extent it attempts to hold Dr. Ghosh responsible for the actions or inactions of other physicians and to the extent it seeks to hold Dr. Ghosh responsible for alleged failures to renew prescription medication.

6. Dr. Alpert's report should also be stricken because while he improperly opines that Wexford did not provide Plaintiff with adequate medical care. As an initial matter, Wexford cannot be held liable on the basis of *respondeat superior* liability. *Jackson v. Illinois Medi-Car, Inc.*, 300 F.3d 760, 766 (7th Cir. 2002). Rather, Wexford can only be held liable if Plaintiff can demonstrate he was injured as a result of a policy or practice attributable to it. Dr. Alpert does not identify any such policy or procedure. At the very least, this Court should strike all references to Wexford that are contained in the report.

**II.     ARGUMENT**

7. A claim of deliberate indifference contains both an objective and subjective component. *Roe v. Elyea,* 631 F.3d 843, 857 (7th Cir.201) (citing *Farmer v. Brennan,* 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)). To satisfy the objective component, a plaintiff must demonstrate that his medical need was sufficiently serious. *Id.* (citing *Gutierrez v. Peters,* 111 F.3d 1364, 1369 (7th Cir.1997)).

8. "Medical decisions that may be characterized as 'classic example[s] of matter[s] for medical judgment,' such as whether one course of treatment is preferable to another, are beyond the Amendment's purview. Such matters are questions of tort, not constitutional law." *Snipes v. DeTella,* 95 F.3d 586, 592 (7th Cir.1996) (internal citation omitted).

9. "For a medical professional to be liable for deliberate indifference to an inmate's medical needs, he must make a decision that represents 'such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person

130521390v1 0938259

responsible actually did not base the decision on sound judgment." *Jackson v. K*otter, 541 F.3d 688, 697 (7th Cir. 2008).

10. Significantly, "the Constitution is not a medical code that mandates specific medical treatment." *Id*. "A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment." *Id*. at 697-98 (quoting *Estelle v. Gamble*, 429 U.S. 97, 107 (1976)).

11. It is well recognized that "[m]ere negligence in diagnosis or treatment, or proof of medical malpractice without more, does not rise to the level of deliberate indifference." *Randle v. Mesrobian*, 165 F.3d 32 (7th Cir. 1998). "[T]he courts have labored mightily to prevent the transformation of the Eighth Amendment's cruel and unusual punishments clause into a medical malpractice statute for prisoners." *Bryant v. Madigan,* 84 F.3d 246, 249 (7th Cir.1996).

12. The Seventh Circuit has affirmed the rejection of an expert report under identical circumstances. *Lor vs. Kelly*, 436 Fed.Appx. 634, 637 (7th Cir. 2011) ("the court properly excluded the report because the expert's conclusions in the report were inconsequential and irrelevant to Lor's claims of deliberate indifference against Kelley.")

13. As discussed below, Dr. Alpert's criticisms should be stricken because his opinions simply suggest that Dr. Ghosh committed medical malpractice and that is not the standard that applies to a claim of deliberate indifference. Additionally, the report should be stricken because Dr. Alpert's opinions as to the existence of medical malpractice may improperly influence a trier of fact into believing that Dr. Ghosh acted with deliberate indifference when there is not testimony from Dr. Alpert touching on this high standard.

### A. Plaintiff's Claimed Injury to Right Pink Finger

14. Dr. Alpert's report states that "Dr. Ghosh and Wexford failed to provide adequate treatment to Plaintiff's right small finger." Report, p. 4, ¶ 1. Dr. Alpert opines that "Dr. Ghosh and Wexford delayed in diagnosing and referring Mr. Hardy to an orthopedic hand surgeon which led to a flexion contracture of his right small finger." *Id*. Dr. Alpert discusses a three month process of treatment that was utilized to straighten Plaintiff's finger and notes that Plaintiff "still has a approximately 20 degree curvature of his right small finger." *Id*. Notably, Dr. Alpert does not offer an opinion as to whether an earlier referral to an orthopedic hand surgeon would have caused Plaintiff's finger to return to normal.

15. Dr. Alpert's report summarizes the history of treatment that Plaintiff received for the injury to his right pinky finger by identifying the initial treatment, diagnosis and suggested course of treatment that was provided by LaTanya Williams, physicians assistant. Report, p. 5. Dr. Alpert offers no criticism of her actions. Dr. Alpert's report goes on to discuss Dr. Ghosh's interactions with Plaintiff, and notes that Dr. Ghosh diagnosed Plaintiff with a "swan neck deformity" to his right small finger and that Dr. Ghosh's course of treatment involved splinting the finger. Report, pp. 5-6.

16. Dr. Alpert criticizes Dr. Ghosh's September 13, 2010, course of treatment by noting that the splint got wet and was never replaced. Dr. Alpert does not suggest that Dr. Ghosh was responsible for the loss of the splint, nor he does Dr. Alpert suggest that Dr. Ghosh was responsible for not replacing the damaged splint. Dr. Alpert does not even suggest that Dr. Ghosh knew about the damaged splint or the absence of a replacement splint.

17. Dr. Alpert discusses Dr. Ghosh's November 22, 2010 course of treatment where Dr. Ghosh prescribed a muscle relaxer and pain medication. Report, p. 6. Dr. Alpert also notes

130521390v1 0938259

that an MRI was approved on November 30, 2010 (mistakenly noted as 2011 in his report). *Id*. Plaintiff was sent to the University of Illinois at Chicago Medical Center ("UIC") on January 21, 2011, for an MRI of his right small finger. There is nothing in Dr. Alpert's report to suggest that the time it took to approve the MRI, or the time it took to set up the appointment, constitutes deliberate indifference. As discussed below, there is nothing to suggest that the time period it took to set up the off-site appointment once it was approved was attributable to Dr. Ghosh. Dr. Alpert cannot offer such an opinion as the scheduling of the appointment was made by UIC.

18. Dr. Alpert notes that Plaintiff appears to have a "similar injury to his left small finger" which resulted in his referral to an orthopedic surgeon at UIC for surgical intervention. Report, p. 7. Dr. Alpert, however, does not identify how severe that injury was, but states that the small finger was "dislocated (out of the socket)" and notes that "[t]he finger was reduced (put back in place)." Notably, Plaintiff's *right* pinky was not dislocated, it was only sprained. See Report, p. 5. Despite the difference in the severity of the two injuries, Dr. Alpert details the course of treatment for the left pinky finger and suggests that the same course of treatment should have been provided to Plaintiff's right pinky injury. Report at pp. 7-8. Dr. Alpert appears to suggest that a similar treatment should have been applied to the right finger because Plaintiff identifies his prior injury in a September 3, 2010, grievance. There is nothing in the record, nor does Dr. Alpert suggest that Dr. Ghosh was aware of the prior injury or course of treatment.

19. Dr. Alpert's report criticizes Dr. Ghosh because Plaintiff's damages splint was never replaced. Report, p. 8. As noted above, there is nothing in the rerecord (or in the Report) to suggest that Dr. Ghosh was aware of the damages splint and the lack of a replacement. That being the case, there is no basis for Dr. Alpert to criticize Dr. Ghosh for the absence of a replacement splint.

130521390v1 0938259

20. Dr. Alpert criticizes Dr. Ghosh for not ordering an MRI until "almost three months after the injury," Report, p. 8. Dr. Alpert's criticism is misplaced because there is nothing to suggest *that Dr. Ghosh was aware that the splint was damages and not replaced.* Accordingly, there is nothing in the record to suggest that Dr. Ghosh knew that Plaintiffs' finger was left unsplinted for this three month time period. It is axiomatic that Dr. Ghosh cannot be held liable for events that he is not aware of or for events beyond his control.

21. Dr. Alpert also criticizes Dr. Ghosh for the fact that Plaintiff did not receive the MRI until "almost five months after the injury." Report, p. 8. This criticism is misplaced for two reasons. First, the MRI was given less than two months after it was ordered by Dr. Ghosh. Dr. Alpert does not offer any facts to suggest that the timing of the MRI was negligent. Second, there is nothing in the record to suggest that Dr. Ghosh has control over the scheduling of an MRI by a third party such as UIC. Absent any facts suggesting that other open dates existed (there is no such evidence) and that Dr. Ghosh had the authority to schedule dates for procedures conducted by UIC employees, there is no basis for Dr. Alpert to opinion that Dr. Ghosh was responsible for the timing of the MRI. To recap, Dr. Ghosh ordered the MRI on November 30, 2010, and it took place on January 21, 2011. Report, p. 8.

22. Most importantly, Dr. Alpert's report should also be stricken because it is improperly predicated on the course of treatment he would have administered as an orthopedic surgeon. According to page 8 of Dr. Alpert's report:

> Mr. Hardy has not been given adequate medical treatment for this small finger injury. The standard of care for an injury such as this consists of splinting techniques and physical therapy performed consistently and weekly within the first six weeks in order to decrease the chances of the finger staying in a deformed position and letter scar tissue form which ultimately can lead to a more permanent deformity or flexion contracture (finger stuck, unable to fully extend).

7

23. This is the wrong standard to apply and there is no citations to any medical standards which state that the recommended course of treatment should have been administered by a general practitioner like Dr. Ghosh. "Prisons are not required to keep specialists on staff, and inmates have no automatic right to consult with outside physicians." *Randle vs. Mesrobian*, 165 F.3d 32, *3 (7th Cir. 1998).

24. Further, it is well recognized that disagreements with a prescribed treatment does not amount to deliberate indifference. *Snipes v. DeTella,* 95 F.3d at 586. *See also, Forbes v. Edgar,* 112 F.3d 262, 266 (7th Cir.1997) (plaintiff cannot demonstrate that a doctor exhibited deliberate indifference by claiming that the doctor failed to provide a specific treatment).

25. Nothing in Dr. Alpert's report points to the fact that the Dr. Ghosh and/or Wexford were deliberately indifferent with his treatment. In fact, the Plaintiff was treated and even referred out to a orthopedic specialist at one point. Defendants' care of Plaintiff does not even rise to the level of negligence.

26. Additionally, Mr. Alpert's analysis of the course of treatment Plaintiff received in a prior left finger injury back in 2008 should be wholly disregarded. In this report, Dr. Alpert describes and compares a course of treatment Plaintiff received when he injured a finger in his left hand. This part of the report further indicates the irrelevancy of Dr. Alpert's assessment. What injury Plaintiff sustained in 2008 to his left hand finger cannot be compared to injury he sustained to his right hand finger in the present case. Circumstances may have been entirely different, so any comparison should be disregarded as inappropriate, and moreover, irrelevant.

27. In summary, Dr. Alpert's report should be stricken because it couched in terms of a hypothetical outcome which is speculative at best. Dr. Alpert careful choice of words – "*it is more likely than not* that Mr. Hardy developed this flexion contracture due to the fact that he did

not get it appropriately treated with splinting and physical therapy techniques" (Report at p. 9, emphasis supplied), suggests that Plaintiff may still have suffered the same type of injury even if prompt splinting and physical therapy was applied. Again, this carefully couched hypothetical is improperly phrased in terms of the course of treatment that an orthopedic specialist may have provided.

28. Finally, there is no specific mention of any misconduct attributable to Wexford. For this reason alone, all references to Wexford in the report which suggests that Wexford failed to provide "adequate" treatment should be stricken.

### B. Plaintiff's Claimed Right Elbow and Wrist Injury

29. In discussing Plaintiff's right elbow and wrist injury, Dr. Alpert notes that "a doctor prescribed a wrist brace and physical therapy," but criticizes Dr. Ghosh and Wexford because "it took Mr. Hardy over three months to obtain a wrist brace" and because Plaintiff never received physical therapy. Report, p. 4, ¶ 2. Dr. Alpert also appears to criticize both Dr. Ghosh and Wexford because Plaintiff "continues to have pain . . . numbness and tingling in his right hand" which has "yet to be addressed or treated." *Id*. at pp. 4-5, ¶ 2.

30. Notably, a large part of Dr. Alpert's opinion focuses evaluations and performed by other, non-defendant Wexford employees (Dr. Zhang and Ms. Williams, a physicians assistant). Report, pp. 9, 11. There is nothing in Dr. Alpert's report which suggests that Dr. Zhang and Ms. Williams acted in an improper manner, let along any opinions which suggest that Dr. Ghosh is responsible for the treatment that they may have provided (or failed to provide).

31. The record is clear that Dr. Ghosh *treated* Plaintiff's injury by ordering an x-ray (which was unremarkable), prescribing physical therapy, ordering Plaintiff a wrist brace, and

9

prescribing him Tramadol. Report, pp. 9-10. Oddly, Dr. Alpert criticizes Dr. Ghosh despite the existence of "normal x-rays." *Id.* at p. 11.

32. While Dr. Alpert is critical that "it took approximately greater than three months for Mr. Hardy to receive his wrist brace" (Report, p. 9), Dr. Alpert points to no facts to suggest that this alleged delay was attributable to Dr. Ghosh or Wexford.

33. Dr. Alpert also criticizes Dr. Ghosh because Plaintiff (allegedly) did not receive any physical therapy despite the fact that Dr. Ghosh had ordered it. Report, p. 10. Again, Dr. Alpert points to no facts to suggest that failure to provide the prescribed physical therapy *was attributable to Dr. Ghosh or Wexford*.

34. Against these facts, Dr. Alpert claim that Dr. Ghosh and Wexford failed to provide "adequate" treatment for his right wrist and elbow injury. Dr. Alpert appears to suggest a *different* and more rapid course a treatment Defendants should have taken in treating Plaintiff's wrist and elbow injury. Again, Dr. Alpert's opinions fail to demonstrate that Dr. Ghosh acted with deliberate indifference in the course of his treatment of Plaintiff's injury.

35. While Dr. Alpert puts great emphasis on Plaintiff's deposition testimony where he claimed Plaintiff "still had difficulty with pain" (Alpert's words), Dr. Alpert ignores the fact that Dr. Ghosh's June 12, 2010 physical exam revealed "no deformity and there was full rang of motion of the wrist, fingers, and elbow." Report at p. 10.

36. Dr. Alpert also puts great emphasis on the fact that Plaintiff filed numerous grievances. Report at p. 10. There is nothing in the record to suggest that Dr. Ghosh knew of the grievances and/or was responsible for addressing the grievances.

37. Finally, Dr. Alpert's report suggests that a electromyography would have been "important" in Plaintiff's case. Report p. 11. However, Dr. Alpert fails to state that such a test

10

should have been required or the fact that it wasn't done was below the standard of care. Again, Dr. Alpert's mere disagreement with the course of treatment taken by Dr. Ghosh and Wexford does not meet the level of deliberate indifference, and nothing in Dr. Alpert's report suggests that to be the case. Instead, Dr. Alpert's report purports to merely suggest alternative medical actions that could have been taken. As noted above, these criticisms to not state a claim for deliberate indifference.

38. Again, there is no specific mention of any misconduct attributable to Wexford. Accordingly, all references to Wexford in the report which suggests that Wexford failed to provide "adequate" treatment should be stricken.

### C. Plaintiff's Claim of Chronic Back Pain

39. Lastly, Dr. Alpert claims that "Dr. Ghosh and Wexford failed to provide adequate treatment regarding Mr. Hardy's chronic back pain." Report, p. 5, ¶ 3.

40. Although Dr. Alpert notes that "a doctor prescribed 'serious physical therapy' and doctors have prescribed pain medications and muscle relaxers," he criticizes Dr. Ghosh and Wexford by claiming that "Mr. Hard has received limited access to physical therapy . . . and there have been multiple instances where his pain medications and muscle relaxers were not filled in a timely fashion." *Id*.

41. The report must be stricken because there is nothing in the record (or the report) which suggests that Dr. Ghosh was personally responsible for the alleged lack of treatment. Simply stated, there is no discussion of Dr. Ghosh or Wexford's alleged mistreatment within the report.

42. To the extent Dr. Alpert's report again suggests alternative treatment courses, like bi-weekly epidural steroid shots, again, Dr. Alpert's report merely suggests an *alternative* course

11

of treatment rather than showing that Plaintiff's care was deliberately indifferent. Nothing in Defendants' course of treatment of Plaintiff's chronic back pain purports to rise to even a level of mere negligence.

### III.     CONCLUSION

43.     Dr. Alpert's expert report merely suggests alternative courses of treatment that he believes Defendants should have taken in treating Plaintiff's right pinky finger, right wrist/elbow injury and chronic back pain. As previously stated, mere differences in medical decisions, such as whether one course of treatment is preferable to another, are beyond the Eighth Amendment's purview. *Snipes,* 95 F.3d at 592. The medical records clearly show that Defendants did not simply ignore Plaintiff's complaints. In fact, on the contrary, the records show that Defendants were responsive and Plaintiff received continuous medical care. At most, Dr. Alpert's report offers an opinion that Defendants were negligent. However, there is no evidence nor does that report indicate the Defendants were subjectively indifferent to Plaintiff's needs. Showing that another physician might have chosen another course of treatment does not show deliberate indifference. Additionally, mere negligence in diagnosis or treatment does not rise to the level of deliberate indifference. *See also Bryant v. Madigan,* 84 F.3d 246 (7th Cir. 1996). For the reasons state above, this Court should grant Defendant's Motion to Strike Dr. Alpert's Expert Report as the conclusions in the report are inconsequential and irrelevant to Plaintiff's claim of deliberate indifference against Defendants.

130521390v1 0938259

WHEREFORE, Defendants WEXFORD HEALTH SOURCES, INC. and DR. PARTHA GHOSH, respectfully request that this Honorable Court grant their Motion to Strike Dr. Josh Alpert's Expert Report, any for any additional relief that this Court deems just and proper.

| | |
|---|---|
| James C. Vlahakis<br>Adam S. Guetzow<br>Jason L. Santos<br>HINSHAW & CULBERTSON LLP<br>222 N. LaSalle Street, Suite 300<br>Chicago, IL 60601<br>(312) 704-3000 | Respectfully Submitted,<br><br>By: ___*s/James C. Vlahakis*___<br>James C. Vlahakis<br>One of the Attorneys for<br>Defendants Wexford Health Sources, Inc. and Dr. Partha Ghosh |

**CERTIFICATE OF SERVICE**

   I hereby certify that on February 22, 2013, I electronically filed the above document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing(s) to all counsel of record.

/s/ James C. Vlahakis
James C. Vlahakis
Hinshaw & Culbertson LLP
Attorney for Defendant
222 North LaSalle, Suite 300
Chicago, IL 60601
tel 312-704-3715

130521390v1 0938259