**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| NEDRICK J. HARDY, SR., ) <br> ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> MARCUS HARDY, ) <br> KENNETH OSBORNE, ) <br> PARTHA GHOSH, ) <br> JACQUELINE MITCHELL, ) <br> DR. THOMAS, ) <br> JOE SHEEHY, ) <br> DANIELLE TAYLOR, and ) <br> WEXFORD HEALTH SOURCES, INC., ) <br> ) <br> ) <br> Defendants. ) <br> ) | Case No.: 1:10-cv-05921 <br><br> Judge Thomas M. Durkin <br><br><br> **JURY TRIAL REQUESTED** |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION TO STRIKE DR. JOSH ALPERT'S EXPERT REPORT**

NOW COMES, Plaintiff Nedrick J. Hardy, Sr. ("Mr. Hardy" or the "Plaintiff"), by his counsel, Kirkland & Ellis, LLP, in opposition to the Motion to Strike Dr. Josh Alpert's Expert Report (the "Motion"), which was filed by Defendants Dr. Partha Ghosh and Wexford Health Sources, Inc. (collectively, the "Wexford Defendants"). In support of this response, Mr. Hardy respectfully states as follows:

**INTRODUCTION**

Motions to strike words, sentences, or sections out of briefs serve no purpose except to aggravate the opponent and though that may have been the goal here, this goal is not one the judicial system will help any litigant achieve. Motions to strike disserve the interest of judicial economy. The aggravation comes at an unacceptable cost in judicial time.

*Redwood v. Dobson*, 476 F.3d 462, 471 (7th Cir. 2007) (Easterbrook, J.). Indeed, in addition to wasting time, the Motion is dead on arrival. The Wexford Defendants cannot satisfy the applicable Federal Rule of Civil Procedure that governs motions to strike—Rule 12(f). On this basis alone, the Court should deny the Wexford Defendants' Motion. Viewed in its true light, this Motion is a thinly veiled attempt to present arguments usually reserved for the summary judgment stage in order to avoid the costs of retaining and serving an expert report. This Court should not oblige the Wexford Defendants and should deny their Motion with prejudice.

## **PROCEDURAL BACKGROUND**

This action began on September 17, 2010, when Mr. Hardy, an inmate at Stateville Correctional Center ("Stateville"), filed a complaint *pro se* seeking damages pursuant to 42 U.S.C. § 1983 for deprivation of his rights under the Eighth Amendment to the United States Constitution. [Dkt. No. 1]. On the same date, Mr. Hardy filed a motion seeking appointment of counsel, [Dkt. No. 4], and the Court appointed Mr. Craig D. Leavell of Kirkland & Ellis LLP on December 23, 2010. [Dkt. No. 9].

After the Court granted in part and denied in part Defendants' motions to dismiss [Dkt. No. 66], Mr. Hardy filed a Third Amended Complaint on October 05, 2011. [Dkt. No. 67]. (The Third Amended Complaint is the operative complaint in this case—not the Second Amended Complaint as the Wexford Defendants claimed.) As relevant to this Motion, Mr. Hardy sued the Wexford Defendants for inadequate access to medical care under, under 42 U.S.C. § 1983, and for intentional infliction of emotional distress, under Illinois law. [Id.]. Mr. Hardy alleged that he did not receive adequate and timely medical treatment for his dental issues, wrist and elbow, chronic back pain, and right pinkie finger, and he did not receive his medications in a timely manner—or sometimes at all. [Id.].

Since then, the parties have completed fact discovery, including the depositions of Mr. Hardy, Dr. Ghosh, Dr. Liping Zhang, Ms. Latanya Williams, and other current and former Wexford employees. On January 25, 2013, Mr. Hardy served his expert report of Dr. Josh Alpert (the "Report). The Wexford Defendants' expert report was due March 25, 2013, until the Wexford Defendants requested a suspension of that date pending this Motion. Expert discovery is scheduled to close on April 30, 2013. Dispositive motions are due on May 30, 2013.

## FACTUAL BACKGROUND

Contrary to the Wexford Defendants' arguments that they were not "responsible" or "aware" of Mr. Hardy's serious medical conditions, Defs.' Mot. 4: ¶¶ 4–6, the evidence demonstrates otherwise.

Wexford, pursuant to a contract with the State of Illinois, provides health care services to inmates at Stateville, including preventive care, routine ambulatory care, emergency service, infirmary care, chronic care, pharmaceutical service, laboratory service, radiology service and physical therapy. Wexford's policies, procedures and practices at Stateville with respect to providing medical care to inmates and staffing, for instance, denied Mr. Hardy access to adequate medical and dental care. As one example, although Wexford recognized that certain UIC specialists were refusing to see inmates because Wexford would not guarantee physical therapy, Wexford did not increase its physical therapy hours at Stateville. In fact, Wexford knew that there was a two-year waiting list for physical therapy at Stateville, but did nothing to reduce the back log. Moreover, Wexford had knowledge of Mr. Hardy's complaints of lack of medical care. Mr. Hardy sent letters to Allan Karraker, Wexford's Regional Administrator, and Kevin Halloran, President and CEO of Wexford—specifically seeking medical treatment for his dental issues and informing them that Dr. Ghosh and the Wexford dentist, among others, had failed to respond to his sick call requests, grievances and letters for almost six months.

Similarly, Dr. Ghosh, at all times relevant to the allegations in the Third Amended Complaint, was the Site Medical Director at Stateville and was employed by Wexford. Dr. Ghosh, as the Medical Director, led and oversaw Wexford's medical practice at Stateville. He was ultimately responsible for all health care provided by Wexford and delivered at Stateville. Indeed, the physical therapist, the dentist, the staff physicians and the physician assistants all reported to Dr. Ghosh. Dr. Ghosh was also responsible for making referrals and arrangements with medical specialists under contract as needed for treatment of those inmates with health care problems that extended beyond the scope of services provided by Wexford. In addition, Dr. Ghosh reviewed grievances relating to medical care and also discussed them at monthly meetings. Furthermore, as alleged in the Third Amended Complaint, Mr. Hardy made Dr. Ghosh aware of his medical complaints in numerous grievances, sick call requests and letters sent directly to Dr. Ghosh.

These facts demonstrate that the Wexford Defendants were aware of Mr. Hardy's serious medical conditions and multiple requests to receive adequate and timely medical treatment. Despite this, the evidence will show that the Wexford Defendants ignored Mr. Hardy's pleas for medical care or significantly delayed adequate medical care causing Mr. Hardy unnecessary pain and suffering. This is deliberate indifference. *See Flournoy v. Ghosh*, 881 F. Supp. 2d 980, 989 (N.D. Ill. 2012) (denying Dr. Ghosh's motion for summary judgment on the grounds that the record supported a finding that he, as medical director, was responsible for coordinating the health-care program under the Wexford contract); *Gevas v. Borkowski*, No. 08 C 3074, 2011 WL 304960, at *4 (N.D. Ill. Jan. 27, 2011) *aff'd, Gevas v. Mitchell*, 492 F. App'x 654 (7th Cir. 2012) (affirming the district court's denial of Dr. Ghosh's motion for summary judgment related to plaintiff's claims for inadequate dental care); *Heard v. Illinois Dept. of Corr.*, No. 06 C 644,

4

2012 WL 832566, at *9 (N.D. Ill. Mar. 12, 2012) (denying Wexford's and Dr. Ghosh's motion for summary judgment where the record supported plaintiff's claims of deliberate indifference related to a hernia); *Fox ex rel. Fox v. Peters*, No. 09 C 5453, 2011 WL 6378826, at *8 (N.D. Ill. Dec. 19, 2011) (denying Wexford's motion for summary judgment where Wexford was unable to overcome the plaintiff's allegations that certain of Wexford's policies led to failures to provide appropriate medical care to inmates). See also *Roe v. Elyea*, 631 F.3d 843, 857-58 (7th Cir. 2011) ("However, a successful plaintiff need not 'show that he was literally ignored' in his demands for medical treatment, and a defendant's showing that a plaintiff received 'some' treatment does not resolve the issue conclusively if the treatment was 'blatantly inappropriate.'").

## ARGUMENT

### A. The Wexford Defendants' motion to strike Dr. Alpert's expert report is improper.

Motions to strike are governed by Federal Rule of Civil Procedure 12(f), which states that the Court "may strike from [any] *pleading* an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f) (emphasis added). "Motions to strike are strongly disfavored and are rarely granted." *Custom Foam Works, Inc. v. Hydrotech Systems, Ltd.*, No. 09-cv-0710, 2010 WL 4386710, at *1 (S.D. Ill. Oct. 29, 2010), *citing Heller Fin. Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1294 (7th Cir. 1989). The decision to grant or deny a motion to strike is committed to the court's sound discretion. See *Delta Consulting Group, Inc. v. R. Randle Constr., Inc.*, 554 F.3d 1133, 1141-42 (7th Cir. 2009).

"[M]otions to strike pursuant to Rule 12(f) are appropriate only to strike matters contained in the *pleadings*." *Custom Foam Works*, 2010 WL 4386710, at *1 (emphasis added). Under Federal Rule of Civil Procedure 7(a), only a complaint, answer and reply constitute pleadings. Fed. R. Civ. P. 7(a). Noticeably absent from Rule 7(a) are expert reports. "Only

5

material included in a 'pleading' may be the subject of a motion to strike, and courts have been unwilling to construe the term broadly. Motions, briefs, or memoranda, objections, or affidavits may not be attacked by the motion to strike." 2 James Wm. Moore et al., Moore's Federal Practice § 12.37[2] (3d ed. 2004). Indeed, courts in this and other circuits have refused to consider motions to strike when the motion was not directed at a pleading. *See, e.g.*, *Custom Foam Works*, 2010 WL 4386710, at *1 ("The document at issue, a memorandum in opposition to Defendants' motion for summary judgment, is not considered to be a pleading, so a motion under 12(f) is not a proper proceeding."); *Kartiganer v. Newman*, No. 09-CV-00050, 2010 WL 3928087, at *4 (D. Colo. Sept. 24, 2010) *aff'd*, 450 F. App'x 713 (10th Cir. 2011) ("Plaintiff's motion to strike is not directed at a pleading and clearly warrants denial on this basis."); *Johnson v. Manitowoc Boom Trucks, Inc.*, 406 F. Supp. 2d 852, 864 (M.D. Tenn. 2005) *aff'd*, 484 F.3d 426 (6th Cir. 2007) (holding that a Rule 12(f) motion to strike does not apply to the opinions of an expert expressed at a deposition and in an affidavit because those are not "pleadings" within the narrow definition of Rule 7(a)); *In re Commercial Money Ctr., Inc., Equip. Lease Litig., et al.*, No. 02-CV-16000, 2007 WL 1514282, at *3 (N.D. Ohio May 22, 2007) ("With respect to expert reports, too, courts in this Circuit have held that motions to strike are inapplicable, and have stated that the proper vehicle is a motion in limine.").

      Here, the Wexford Defendants ask the Court to strike Mr. Hardy's expert report. Expert reports are not pleadings under Federal Rule of Civil Procedure 7(a), and thus cannot be attacked by a motion to strike. On this basis alone, the Court should deny the Motion. *See Custom Foam Works, 2010 WL 4386710, at *1; In re Commercial Money Ctr., 2007 WL 1514282, at *3.*

**B.     The Wexford Defendants' belief that deliberate indifference will only be shown through Dr. Alpert's expert report is wrong.**

The Wexford Defendants' Motion implies that, in this case, deliberate indifference will *only* be shown through Dr. Alpert's expert report. This belief is blatantly incorrect.

It is black letter law that the trier of fact will consider evidence, including testimony, documents, affidavits, admissions *and/or* expert reports in considering whether the Wexford Defendants were deliberately indifferent to Mr. Hardy's serious medical conditions. *See, e.g., Heard v. Ill. Dept. of Corrections*, No. 06 C 644, 2012 WL 832566, at *4 (N.D. Ill. Mar. 12, 2012) ("Summary judgment is proper when the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact. . . ."); Black's Law Dictionary (9th ed. 2009) ("Evidence: 1. Something (including testimony, documents and tangible objects) that tends to prove or disprove the existence of an alleged fact. 2. See *fact in evidence* under fact. 3. The collective mass of things, esp. testimony and exhibits, presented before a tribunal in a given dispute."). Therefore, the Wexford Defendants' complaint that Dr. Alpert's expert report does not address every element in Mr. Hardy's claim for deliberate indifference is misplaced.

Indeed, an expert report is not even required to show deliberate indifference. For instance, in *Grieveson v. Anderson*, 538 F.3d 763 (7th Cir. 2008), the court ruled:

> Grieveson did not introduce expert testimony stating that his medical condition worsened because of the delay-but that does not mean Grieveson offered no verifying medical evidence. Grieveson supplied medical records indicating that he had a nasal fracture, that he could experience further bleeding, and that he may need to see a specialist. Grieveson later underwent painful nose surgery. The evidence Grieveson provided would certainly help a jury determine whether the delay 'unnecessarily prolonged and exacerbated' Grieveson's pain, and thus qualifies as verifying medical evidence that supports a genuine issue of material fact regarding the seriousness of Grieveson's medical condition.

7

*Id.* at 779 (citations omitted). *Accord Gayton v. McCoy*, 593 F.3d 610, 624 (7th Cir. 2010) ("Expert testimony is not always necessary to establish causation in a case where an inmate alleged that prison employees violated his due process rights by failing to provide him with adequate medical care."); *Hathaway v. Coughlin*, 37 F.3d 63, 68 (2d. Cir. 1994) (holding that a jury could infer deliberate indifference notwithstanding the absence of expert testimony).

Nonetheless, Mr. Hardy will show that the Wexford Defendants were deliberately indifferent to his serious medical conditions by offering "evidence," including (but not limited to) grievances, letters, deposition testimony, deposition exhibits, journals, medical records, policies and procedures, contracts and the Report. This evidence, taken together, will prove that the Wexford Defendants were deliberately indifferent to Mr. Hardy's serious medical conditions.

  **C. The Wexford Defendants' arguments that Dr. Alpert, an orthopedic surgeon, should not opine as to the conduct of Dr. Ghosh, a general practitioner, are unavailing.**

In another attempt to strike Dr. Alpert's expert report, the Wexford Defendants argue that "Dr. Alpert's report should also be stricken because it is improperly predicated on the course of treatment he would have administered as an orthopedic surgeon." Defs.' Mot. 4: ¶ 22. This argument is a red herring. Whether a generalist or a specialist, Dr. Ghosh had the duty and the responsibility to provide Mr. Hardy with adequate medical care for his serious medical conditions.

Courts recognize that general practitioners, like all physicians, have received basic training in matters of anatomy and pain treatment. *See Banister v. Burton*, 636 F.3d 828, 832 (7th Cir. 2011) (upholding district court's finding that any "physician who studied anatomy" could testify as to the plaintiff's physical abilities); *Heard v. Illinois Dept. of Corrections*, No. 06 C 644, 2012 WL 832566, at *4 n.5, (N.D. Ill. Mar. 12, 2012) ("[T]he Court notes that generally, pain and hernia treatment are basic matters of anatomy that any medical doctor[] would have

8

sufficient knowledge of."); *Randle v. Mesrobian*, No. 98-1590, 165 F.3d 32, at *3 (7th Cir. 1998) ("Moreover, general practitioners, like all physicians, have received basic training in treating cardiac problems."). *See also Gayton v. McCoy*, 593 F.3d 610, 617 (7th Cir. 2010) ("courts often find that a physician in general practice is competent to testify about problems that a medical specialist typically treats"). Therefore, Dr. Ghosh cannot hide behind the fact that he was a general practitioner to avoid liability in this case.

      Furthermore, just because Dr. Ghosh is not a specialist does not mean that he can sit back and do nothing to treat Mr. Hardy's medical complaints. At the very least, Dr. Ghosh should have followed the recommendations of the specialists who saw Mr. Hardy for his chronic back pain and right pinkie finger. In addition, Dr. Ghosh, as the medical director at Stateville, should have sent Mr. Hardy to see a specialist for his wrist and elbow and hernia. As courts have found, Dr. Ghosh's inactions, after repeated pleas from Mr. Hardy for medical treatment, were deliberately indifferent. *See, e.g., Arnett v. Webster*, 658 F.3d 742, 753 (7th Cir. 2011) (Allegations of "refusal . . . to follow the advice of a specialist can also state an Eighth Amendment claim."); *Gil v. Reed*, 381 F.3d 649, 664 (7th Cir. 2004) (denying summary judgment to a doctor who cancelled one medication in favor of one another against the explicit instructions of a specialist); *Jones v. Simek*, 193 F.3d 485, 490 (7th Cir. 1999) (finding a six month delay in referring a patient to a specialist and then not following the specialist's advice was sufficient for a reasonable fact-finder to find deliberate indifference). *See also Hathaway v. Coughlin*, 37 F.3d 63, 68 (2d Cir. 1994) ("We decline to adopt a rule that in effect would exempt general practitioners from being found deliberately indifferent to a patient's serious medical needs as long as that general practitioner at some point refers the patient to a specialist, regardless of the extent of contact that general practitioner has with the patient.").

9

D.     **The Wexford Defendants' reliance on *Lor v. Kelley* is misplaced.**

The Wexford Defendants rely on *Lor v. Kelley*, 436 F. App'x 634 (7th Cir. 2011), to argue that the "Seventh Circuit has affirmed the rejection of an expert report under identical circumstances." Defs.' Mot. 4: ¶ 12. That case, however, is inapposite. In *Lor*, the Seventh Circuit held that the district court's decision to exclude an expert's report for failure to comply with Rule 26 was not an abuse of discretion. *Lor*, 436 F. App's at 638. The expert report was filed in opposition to a motion for summary judgment, and the district court excluded the expert report because it did not include a list of the expert's publications and testimony and did not include the expert's compensation. *Id.* In addition, the Seventh Circuit affirmed the district court's decision to exclude the report "because the expert's conclusions in the report were inconsequential and irrelevant to [Plaintiff]'s claims of deliberate indifference." *Id.* Specifically, the expert opined that the medical care provided "did not meet the 'standard of care.'" *Id.* The Seventh Circuit reasoned: "The quick medical attention aside, treatment below the standard of care shows negligence and negligence is not enough to make out a claim of deliberate indifference." *Id.*

In contrast to *Lor*, this case has not yet reached the time for filing dispositive motions. Indeed, dispositive motions are not due until May 30, 2013—*after* the Wexford Defendants are scheduled to file their expert report. In addition, the Wexford Defendants have not, and cannot, argue that the Report fails to comply with Rule 26. The Report includes a listing of Dr. Alpert's publications and prior testimony, and it also includes Dr. Alpert's compensation. Moreover, the evidence shows that the Wexford Defendants did not provide Mr. Hardy with "quick medical attention." In contrast to *Lor*, the Wexford Defendants took months and even years to provide medical attention to Mr. Hardy. In fact, for Mr. Hardy's wrist and elbow, the Wexford

Defendants have effectively done nothing despite Mr. Hardy's persistent complaints. Accordingly, the Wexford Defendants' reliance on *Lor* is misplaced.

## CONCLUSION

This Court should deny the Wexford Defendants' Motion to Strike Dr. Josh Alpert's Expert Report. *First*, the Wexford Defendants' Motion is procedurally improper. Motions to strike are governed by Federal Rule of Civil Procedure 12(f), which only applies to pleadings. Because the Report is not a pleading, the Court should deny the Wexford Defendants' Motion. *Second*, the Wexford Defendants' belief that Dr. Alpert's expert report has to prove each element of Mr. Hardy's deliberate indifference claim is incorrect. It is black letter law that the trier of fact will consider all evidence in determining whether Mr. Hardy has proven deliberate indifference. *Third*, the Wexford Defendants' attempts to argue that the Report should be stricken because Dr. Alpert is an orthopedic surgeon, while Dr. Ghosh is a general practitioner, are unavailing. Whether a specialist or a generalist, Dr. Ghosh had the duty and the responsibility to provide adequate and timely medical care to treat Mr. Hardy's serious medical conditions. *Lastly*, as courts in this and other circuits have stated, motions to strike are strongly disfavored and should be viewed as dilatory tactics. This Court should view the Motion for what it is: an effort by the Wexford Defendants to avoid the costs of retaining an expert, at the expense of Mr. Hardy's and the Court's time spent dealing with this groundless motion. This Court should not indulge the Wexford Defendants and should deny their Motion with prejudice.

**WHEREFORE**, for the foregoing reasons, Mr. Hardy respectfully requests that this Court deny the Motion to Strike Dr. Josh Alpert's Expert Report. Mr. Hardy also respectfully requests that this Court order the Wexford Defendants to serve their expert report within 21 days of the Order denying the Motion to Strike Dr. Josh Alpert's Expert Report, and for any additional relief this Court deems just and proper.

Dated: March 8, 2013            Respectfully submitted,

/s/ Sylvia Winston
Craig Leavell
Sylvia Nichole Winston
Justin Ryan Bernbrock
KIRKLAND & ELLIS LLP
300 North LaSalle Street
Chicago, Illinois 60654
312-862-2000 Telephone
312-862-2200 Facsimile
craig.leavell@kirkland.com
sylvia.winston@kirkland.com
justin.bernbrock@kirkland.com

*Attorneys for Plaintiff Nedrick J. Hardy, Sr.*

**CERTIFICATE OF SERVICE**

I, Sylvia Winston, hereby certify that on the 8th day of March, 2013, I caused a true and correct copy of the foregoing to be filed electronically. Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

Christopher E. Walter
Assistant Attorney General
General Law Bureau
100 West Randolph, 13th Floor
Chicago, Illinois 60601

James C. Vlahakis
Hinshaw & Culbertson, LLP
222 North LaSalle, Suite 300
Chicago, Illinois 60601

Illinois Department of Corrections
100 West Randolph, Suite 4-200
Chicago, IL 60601


/s/ Sylvia Winston