UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| NEDRICK JEFFREY HARDY, SR., | ) | |
| | ) | No. 10 C 5921 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Judge Thomas M. Durkin |
| | ) | |
| MARCUS HARDY, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**[1]

Nedrick Hardy, Sr. ("Hardy") filed suit against Dr. Partha Ghosh and Wexford Health Sources, Inc. ("Wexford"), collectively, "the Defendants," among others, alleging that they were deliberately indifferent to his medical needs in violation of the Eighth Amendment and intentionally inflicted emotional distress upon him. R. 67. The Court previously granted in part the Defendants' motion for summary judgment. R. 215. In doing so, the Court dismissed the Section 1983 claim against Wexford and several of the particular medical-issue allegations related to the Section 1983 claim against Dr. Ghosh. *Id.* Hardy's intentional infliction of emotional distress ("IIED") claim against both Hardy and Wexford remained. Presently before the Court is the Defendants' Motion for Judgment as a Matter of

---

[1] The Court's citations are to the documents' Docket numbers, as "R __."

1

Law with Regard to Plaintiff's Intentional Infliction of Emotional Distress Claim. R. 225. For the reasons that follow, the Defendants' motion is granted.[2]

## BACKGROUND

Hardy has been an inmate in the custody of the Illinois Department of Corrections ("IDOC") at Stateville Correctional Center in Joliet, Illinois, since 2000. R. 154 ¶ 1. Wexford has a contract with the State of Illinois to provide health care services to those in the custody of the IDOC. Dr. Ghosh was employed by Wexford as Stateville's Medical Director from March 2004 through March 2011. *Id.* ¶ 2. As previously discussed in the Court's summary judgment order, Hardy has experienced a variety of health issues at Stateville, and Dr. Ghosh had a role in much of Hardy's medical care treatment. *Id.* ¶¶ 6-9, 15-17; R. 215 at 1-7.

On October 5, 2011, Hardy filed his Third Amended Complaint. R. 67. The complaint included a claim against the Defendants pursuant to 42 U.S.C. 1983 for a violation of the Eighth Amendment—specifically, that the Defendants were deliberately indifferent to his medical needs—and under Illinois state law for IIED. *Id.* The parties completed discovery, and on June 4, 2013, the Defendants filed a motion for summary judgment as to the Section 1983 claim. R. 151. The IIED claims were not at issue. *See id.*

A deliberate indifference claim requires a plaintiff to prove two elements: an objectively serious risk of harm and a subjectively culpable state of mind. *Farmer v.*

---

[2] The Court issued a minute order granting the motion on Friday, September 13, 2013. R. 261. This opinion explains the reasons.

2

*Brennan*, 511 U.S. 825, 834 (1994); *see Roe v. Elyea*, 631 F.3d 843, 857 (7th Cir. 2011). For purposes of the Defendants' summary judgment motion, and in construing Hardy's Third Amended Complaint in the light most favorable to Hardy, the Court identified five categories of injuries complained of: (1) Hardy's right small finger; (2) Hardy's right wrist and elbow; (3) Hardy's chronic back pain; (4) Hardy's cavity and gum infection; (5) and medication refills. R. 151 ¶ 3; R. 215 at 11-27. Then, applying the summary judgment standard, the Court concluded that three of the categories—the right small injury, the right wrist and elbow ailments, and the cavity and gum infection—were objectively serious and that the "culpable state of mind" element as to Dr. Ghosh and the three categories should go to the jury. R. 215 at 11-17, 21-25. The Court also concluded that the chronic back pain ailment was objectively serious but determined as a matter of law that Hardy did not present sufficient information upon which a reasonable jury could conclude that the culpable state of mind element was satisfied. *Id.* at 18-20. That part of the Section 1983 claim was thus dismissed. *Id.* The medication refill category was determined not to be "objectively serious" and was dismissed as well. *Id.* at 25-27. The only injury category in which Hardy sought to hold Wexford liable under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), was the chronic back pain category. R. 215 at 19-20. The Court concluded that this claim failed as a matter of law because of its prior determination that a reasonable jury could not find that the treatment Hardy received, from Dr. Ghosh or otherwise, was constitutionally deficient. *Id.*

3

The only Section 1983 claims remaining against Dr. Ghosh involve Hardy's right small finger, right wrist and elbow, and cavity and gum infection; no Section 1983 claims remain against Wexford. *Id.* at 29.

In light of the Court's summary judgment rulings, on September 4, 2013—twelve days before their September 16 trial date—the Defendants filed their Motion for Judgment as a Matter of Law with Regard to Plaintiff's Intentional Infliction of Emotional Distress Claim. R. 225. This motion is the subject of this opinion.

**STANDARD OF REVIEW**

The Defendants' motion seeks dismissal of the IIED claim under either Federal Rule of Civil Procedure 12(c) or Rule 56.[4] R. 225 at 3-4. Pursuant to Rule 12(c), a party may move for judgment on the pleadings after the pleadings have closed but prior to trial. The standard applied to motions under Rule 12(c) is the same as that applied to dismissals under Rule 12(b)(6). *Buchanan-Moore v. Cnty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009). Thus, the complaint here must provide "a short plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and that is sufficient to provide the Defendants with "fair notice" of the claim and the basis for it. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This means the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v.*

---

[4] The Defendants' motion is not entirely clear as to which Rule, 12(c) or 56, the Court should use to evaluate the IIED claim against Ghosh and the IIED claim against Wexford. *See* R. 225 at ¶7 ("Defendants have move[d] for judgment in their favor pursuant to FRCP 12(c), FRCP 54(b) and FRCP 56."). The Court will thus use both Rules, applying the particular Rule most appropriate for the party, allegation, and theory of liability at issue.

4

*Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). In applying this standard, the Court accepts all well-pleaded facts as true and draws all reasonable inferences in favor of Hardy. *Mann v. Vogel*, 707 F.3d 872, 877 (7th Cir. 2013).

Alternatively, a party may move for summary judgment pursuant to Federal Rule of Civil Procedure 56. Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). To defeat summary judgment, the non-moving party must produce more than a "mere scintilla of evidence"; this means "evidence on which [a] jury could reasonably find for the non-moving party." *Harris N.A. v. Hershey*, 711 F.3d 794, 798 (2013) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). The Court considers the entire evidentiary record and "view[s] all facts and draw[s] all inferences in the light most favorable to the non-moving party" when ruling on the motion. *Ball v. Kotter*, 723 F.3d 813, 821 (7th Cir. 2013); *Egan Marine Corp. v. Great Am. Ins. Co.*, 665 F.3d 800, 811 (7th Cir. 2011).

## ANALYSIS

Hardy's Third Amended Complaint contains an Illinois state law claim for IIED. To prove an IIED claim under Illinois law, Hardy must put forth evidence establishing the following: "(1) the defendants' conduct was extreme and outrageous; (2) the defendants knew that there was a high probability that their conduct would cause severe emotional distress; and (3) the conduct in fact caused severe distress." *Swearnigen-El v. Cook Cnty. Sheriff's Dep't*, 602 F.3d 852, 864 (7th Cir. 2010) (citing *Kolegas v. Heftel Broad. Corp.*, 607 N.E.2d 201, 211 (Ill. 1992)).

5

The Court will first address the IIED claim against Wexford and, second, the IIED claim against Dr. Ghosh.

**I. IIED Claim Against Wexford**

Wexford contends the IIED claim directly against it must be dismissed because the Court previously dismissed the Section 1983 claim against it. R. 225 ¶ 5. The basis for this contention is that the "deliberate indifference" or "willful and wanton" conduct standard is a lower bar than the "extreme and outrageous" standard; thus, if Hardy cannot meet the lower bar, he surely cannot satisfy the higher bar. *See id* at ¶¶ 13-16. This contention has support and has been followed by numerous district courts. *See Harrison v. Cnty. of Cook*, No. 08 C 3202, 2011 U.S. Dist. LEXIS 102492, at *7 (N.D. Ill. Sept. 12, 2011) ("Harrison has failed to show that there is a genuine issue of fact regarding whether Cook County or Dunlap were deliberately indifferent to his serious medical needs. For this reason, the 'willful and wanton conduct' exception . . . does not apply to Cook County and Dunlap. Accordingly, Cook County and Dunlap are entitled to summary judgment on Harrison's IIED claims against them.") (internal citation omitted); *Wells v. Bureau Cnty.*, 723 F. Supp. 2d 1061, 1088-89 (C.D. Ill. 2010) ("Under the facts of this case, the Court concludes that Plaintiffs' failure to establish an adequate factual basis to support a finding of deliberate indifference or willful and wanton conduct on their § 1983 claim necessarily precludes them from making an adequate showing of extreme and outrageous conduct or that any individual defendant intentionally or recklessly caused severe emotional distress as a matter of law."); *see also Perez v.*

*Town of Cicero*, No. 06 C 4981, 2011 U.S. Dist. LEXIS 113412, at *25-26 (N.D. Ill. Sept. 30, 2011) ("[I]f summary judgment is warranted on a Fourteenth Amendment deliberate indifference claim, it is equally warranted on a willful and wanton claim resting on the same factual allegations. As shown above, [the defendant] is entitled to summary judgment on Plaintiff's deliberate indifference to medical needs claim . . . . It necessarily follows that [the defendant] also is entitled to summary judgment on the willful and wanton claim.") (internal citations omitted). The Court finds this reasoning persuasive. Accordingly, because Wexford was entitled to summary judgment on Hardy's deliberately indifference claim, it necessarily follows that Hardy's direct IIED claim against Wexford fails as well. Summary judgment is granted in favor of the Wexford as to the *direct* IIED claim, and it is therefore dismissed.

In responding to the Defendants' motion, Hardy asserts for the first time that his IIED claim is based upon the doctrine of respondeat superior. R. 257 at 7-8. Hardy now contends that Wexford is liable for IIED because of Dr. Ghosh's conduct, which was allegedly committed within the scope of his employment. *Id.*; *see Brown v. King*, 767 N.E.2d 357, 360 (Ill. App. Ct. 1st Dist. 2001) ("[U]nder the doctrine of respondeat superior, an employer may be vicariously liable for the tortious acts of its employees committed within the scope of employment.") (emphasis omitted). As far as the Court can glean from the record, however, the doctrine of respondeat superior has never been referred to in any of Hardy's complaints or mentioned as a theory of liability in this case in either of the parties' prior briefs, motions, or other

7

documents. [5] It also was not discussed at the parties' pretrial conference. Conceivably, this may be because Hardy's case is primarily under Section 1983, which would not permit liability under a theory of respondeat superior, s*ee Maniscalco v. Simon*, 712 F.3d 1139, 1146 (7th Cir. 2013) ("[J]ust as a municipal corporation is not vicariously liable upon a theory of respondeat superior for the constitutional torts of its employees, *Monell*, 436 U.S. at 694, a private corporation is not vicariously liable under § 1983 for the constitutional torts of its employees." (quoting *Iskander v. Forest Park*, 690 F.2d 126, 128 (7th Cir. 1982))), though the particular reason is inconsequential here.

As the Defendants point out, generally, a separate claim under respondeat superior is specifically alleged in a plaintiff's complaint. *See, e.g.*, *Lewis v. Weis*, No. 09 C 2219, 2012 U.S. Dist. LEXIS 2063, at *3 (N.D. Ill. Jan. 5, 2012); *Johnson v. Cook Cnty.*, No. 11 CV 3203, 2011 U.S. Dist. LEXIS 137872, at *8 (N.D. Ill. Nov. 29, 2011) *aff'd*, No. 12-2431, 2013 U.S. App. LEXIS 9763 (7th Cir. May 15, 2013); *S.J. v. Perspectives Charter Sch.*, 685 F. Supp. 2d 847, 863 (N.D. Ill. 2010). That did not occur here, and Hardy has not put forth any explanation as to why or how the Third Amended Complaint's language satisfied the "fair notice" standard, as described in *Twombly*, 550 U.S. at 555. Federal Rule of Civil Procedure 8 explains that "[p]leadings must be construed so as to do justice." But considering the phrasing of Hardy's Third Amended Complaint, R. 67 ¶¶ 178-83, the Court concludes Hardy did

---

[5] The phrase "respondeat superior" was used in Record numbers 44 ¶¶ 11-12; 56 at 3; 58 at 3; 134 ¶ 6; 152 at 19; and 178 at 14; and spoken by Defense counsel at the parties' status hearing on February 22, 2013. However, it was never used in such a manner as to suggest Hardy was asserting it as a theory of liability.

8

*not* originally intend to plead an IIED cause of action under respondeat superior. The Court is cognizant of the fact that "pleaders in a notice system do not have any obligation to plead legal theories" or use some special set of "code words." *McDonald v. Household Int'l, Inc.*, 425 F.3d 424, 427 (7th Cir. 2005). Nonetheless, the language used was not sufficient to put the Defendants on notice of the respondeat superior theory on which Hardy now attempts to rely. (For example, Hardy does not allege that Dr. Ghosh's purported conduct was within the scope of his employment—specifically, that the "intentional infliction of emotional distress" alleged was actuated, at least in part, by a purpose to serve Wexford. *See Adames v. Sheahan*, 909 N.E.2d 742, 755 (Ill. 2009); *see also Doe v. City of Chi.*, 360 F.3d 667, 670 (7th Cir. 2004).) Thus, any claim that Wexford is liable for IIED under a theory of respondeat superior is dismissed pursuant to Rule 12(c).

Furthermore, because Hardy presented the theory on the eve of trial, the parties did not discuss the theory at the pretrial conference, and the Defendants have not had an opportunity to prepare a defense to this type of claim, any amendment to the complaint or pretrial order at this point would cause undue prejudice to the Defendants. The IIED claim is therefore dismissed with prejudice, and any request for leave to amend is denied. *See* Fed. R. Civ. P. 15(b); Fed. R. Civ. P. 16; *Stanard v. Nygen*, 658 F.3d 792, 797 (7th Cir. 2011) (district courts may deny leave to amend where there is "undue prejudice to the defendants"); *Cruz v. Safford*, 579 F.3d 840, 844 (7th Cir. 2009) (stating that "'[e]leventh hour additions are bound to produce delays that burden not only the parties to the litigation but also the

9

judicial system and other litigants[,]' and a district court can reject new claims to avoid prejudice" (quoting *Soltys v. Costello*, 520 F.3d 737, 743 (7th Cir. 2008))) (alternations in original).

Alternatively, as will be discussed later in this opinion, the Court believes no reasonable jury could find that Dr. Ghosh is liable for IIED. Accordingly, even if the Court were to conclude the respondeat superior theory was properly pled or grant Hardy leave to plead it, Wexford would still be dismissed because Wexford cannot be liable under the theory if its employee is not liable for the conduct at issue. *See DeLuna v. Treister*, 708 N.E.2d 340, 348 (Ill. 1999) (explaining that where a "court note[s] that an employer's derivative liability depends entirely on the liability of its employee, . . . they are considered one and the same tort-feasor. If the employee is adjudged not liable, the employer must necessarily be found not liable, as well.").

## II. IIED Claim Against Dr. Ghosh

Dr. Ghosh also contends he is entitled to summary judgment on the IIED claim against him. R. 257 ¶¶ 17-29. His first argument is similar to that put forth by Wexford: the Court previously dismissed the Section 1983, deliberate indifference back pain and medication refill claims, so the dismissal of the IIED claims on those categories should likewise be dismissed. *Id.* ¶ 17. The Court agrees, and for the reasons previously described regarding the direct IIED claims against Wexford, any IIED claim based upon the back pain and medical refill allegations is dismissed pursuant to Federal Rule of Civil Procedure 56.

Dr. Ghosh's second argument is that the evidence supporting the Section 1983 deliberate indifference allegations regarding Hardy's right small finger, right

10

wrist and elbow, and cavity and gum infection is insufficient for a reasonable jury to conclude that Dr. Ghosh intentionally inflicted emotion distress upon Hardy. *Id.* ¶¶ 18-28. Again, the Court agrees. Even taking all of Hardy's alleged ailments and deliberate indifference claims in the aggregate—all five injury categories identified in the Court's prior summary judgment motion—Hardy has not put forth evidence establishing a genuine issue of material fact as to the first element, that Dr. Ghosh's conduct was "extreme and outrageous." *See Pavlik v. Kornhaber*, 76 N.E.2d 175, 187 (Ill. App. Ct. 1st Dist. 2001) ("It may be the pattern, course and accumulation of acts that make the conduct sufficiently extreme to be actionable, whereas one instance of such behavior might not be." (citing Restatement (Second) of Torts § 46, cmt. J (1965))).

In the Court's August 29, 2013 order granting summary judgment in part, the Court outlined the conduct underlying the IIED allegations against Dr. Ghosh.[6] Regarding Hardy's right small finger, the main issue is the delayed treatment and lack of follow up—Hardy's expert actually agrees with the course of treatment followed, just not the timing of it. R. 215 at 13-14. Looking to Hardy's right wrist and elbow, the main issue is, again, a lack of or delayed course of treatment. *Id.* at 15-17. As the Court previously stated, "Dr. Ghosh provided *some* medical care, including a referral to physical therapy" for the injury, which was within the standard of care, as well as prescribed a wrist brace and pain medication. *Id.* at 15-16 (emphasis in original). The alleged conduct behind Hardy's cavity and gum

---

[6] This is the same conduct supporting the Section 1983 claims; the difference is essentially the mental state or the standard to apply.

11

infection is similar: "Hardy had to wait seven months for his cavity to be filled and then four months for his gum infection to be treated[.]" *Id.* at 21. Finally, Hardy alleges that he "received pain medication and muscle relaxers [for his back] irregularly, *id.* at 19, and his "medications for a deviated septum, acid reflux, and depression were not refilled in a timely manner." *Id.* at 25.

The Court previously held that there was a factual dispute as to whether Dr. Ghosh was "deliberately indifferent," R. 215, but the bar for an IIED claim is higher. "To meet the 'extreme and outrageous' standard, the defendants' conduct 'must be so extreme as to go beyond all possible bounds of decency, and to be regarded as intolerable in a civilized community.'" *Swearnigen-El*, 602 F.3d at 864 (quoting *Kolegas*, 607 N.E.2d at 211); *see Hayes*, 600 F.3d 819, 842 (7th Cir. 2010). In determining whether conduct meets the "extreme and outrageous" standard, courts consider three main factors: (1) "the more power or control the defendant has over the plaintiff, the more likely the conduct will be deemed extreme"; (2) "whether the defendant reasonably believed its objective was legitimate"; and (3) "whether the defendant was aware the plaintiff was 'peculiarly susceptible to emotional distress, by reason of some physical or mental peculiarity'"; *Franciski v. Univ. of Chi. Hosp.*, 338 F.3d 765, 769 (7th Cir. 2003) (quoting and citing *McGrath v. Fahey*, 533 N.E.2d 806, 811 (1998)). The Illinois Supreme Court has explained, "Conduct is of an extreme and outrageous character where 'recitation of the facts to average member of the community would arouse his resentment against the actor, and lead

him to exclaim, "Outrageous!"'" *Doe v. Calumet City*, 641 N.E.2d 498, 507 (Ill. 1994) (quoting Restatement (Second) of Torts § 46, cmt. D, at 73 (1965)).

The fact Hardy characterizes Dr. Ghosh's conduct as "extreme and outrageous" is insufficient to prevent summary judgment against him; he must point to objective evidence supporting the characterization. Here, applying "an objective standard based on all the facts and circumstances of [this] particular case," *see Calumet City*, 641 N.E.2d at 507, a reading of the aforementioned allegations in their entirety does not elicit the "Outrageous!" response required. Dr. Ghosh may have been "deliberately indifferent" by delaying treatment or not fully following through with the treatment given; that is for the jury to determine. But there is no dispute that Dr. Ghosh treated Hardy in *some* capacity and took *some* steps to treat his medical ailments. R. 154 ¶¶ 6-9, 15-17; R. 155, Exs. 2 & 3; R. 165 ¶¶ 5-7. The information does not support a conclusion that Dr. Ghosh "did nothing to alleviate [Hardy's] pain." *Cf. Cobige v. City of Chi.*, 752 F. Supp. 2d 860, 871 (N.D. Ill. 2010), *aff'd in part*, 651 F.3d 780 (7th Cir. 2011). Furthermore, Dr. Ghosh treated thousands of prisoners at Stateville, and there is no evidence demonstrating Dr. Ghosh had a personal dislike of Hardy, told other medical personnel to withhold treatment for Hardy; or had an otherwise toxic relationship with Hardy. Taken together, this information precludes a finding that Dr. Ghosh's conduct was "beyond all possible bounds of decency." *See Kolegas*, 607 N.E.2d at 211.

Seeking to avoid this result, Hardy bootstraps his argument to the *Cobidge* case. *See* 752 F. Supp. 2d 860. The Court is not convinced the cases are sufficiently

analogous. The crux of the plaintiff's case in *Cobidge* was that the decedent-prisoner was in obvious pain while in the custody of the defendants and the defendants "did nothing to alleviate her pain." *Id.* at 864-873. The decedent's pain was so bad that her cellmate testified that the decedent "appeared to be sick and that she was slumped over and moaning." *Id.* at 864. The decedent told the officers "that her stomach hurt and that she felt like her stomach was bleeding." *Id.* at 865. The cellmate further testified that the decedent "told the jail guards at least a dozen times that she was sick, needed to see a doctor, and needed to go to the hospital." *Id.* at 864. Numerous officers were made aware of the decedent's condition, and yet, nothing was ever done. *Id.* at 864-67, 870-73. One sergeant specifically testified that he told other officers to take the decedent to the hospital, but the officers simply brought her back to the jail from bond court, which had "rejected [the decedent] for medical reasons." *Id.* at 865-66. Another officer specifically stated that she told the officer taking over for her that she hoped the officer would "do the right thing." *Id.* at 866. The decedent was found dead on the floor of her cell at 1:30 a.m., two days after the decedent was taken into custody. *Id.*

Hardy's main argument in comparing the cases is based on the first factor to consider, the level of power or control over the plaintiff. He argues that Dr. Ghosh and Wexford "had complete control over Hardy because he was incarcerated at Stateville," just as the defendants in *Cobidge* had complete control of the decedent at the jail. R. 257 at 5. Hardy is correct that this is a factor to consider when determining whether conduct is "extreme or outrageous," *see Feltmeier v.*

14

*Feltmeier*, 798 N.E.2d 75, 82 (Ill. 2003), and the relationship between Dr. Ghosh and Hardy gave Dr. Ghosh some authority over Hardy's medical care, but the factor is by no means determinative. If it was, *all* deliberate indifference claims in a jail would arguably result in claims for IIED; that is not the case. *See generally Johnson*, 2013 U.S. App. LEXIS 9763, at *9 ("If we agreed with Johnson's contention, any time a municipality allowed a prisoner to be alone with anyone, that would create an automatic ground for a constitutional violation if inappropriate conduct occurred. We decline to establish such a benchmark."). But in any event, Dr. Ghosh did not have the same level of control over Hardy as the defendants had in *Cobidge*. The defendants in *Cobidge* had complete authority and physical control over the decedent; any request or concern went through them—health, well-being, or otherwise. *See id.* at 870-71. Dr. Ghosh had a hand in Hardy's medical care and may have been the "the ultimate decision maker[] . . . in providing [Hardy] medical care at Stateville," as Hardy alleges, R. 257 at 5, but Dr. Ghosh was not present with or directly monitoring Hardy on a daily basis. *See* R. 154 at ¶¶ 5-10; R. 174 at ¶¶ 1-4. Hardy had to go through other channels to get to Dr. Ghosh, *id.*; the decedent in *Cobidge* had to directly go through the defendant officers. *See id.* at 864-67, 870-73. Simply put, the relationship of the parties and level of control are not the same.

Briefly looking to the second factor, whether the defendant reasonably believed his actions were legitimate, "greater latitude is given to a defendant pursuing a reasonable objective even if that pursuit results in some amount of

15

distress for a plaintiff." *Honaker v. Smith*, 256 F.3d 477, 491 (7th Cir. 2001) (citing *McGrath*, 533 N.E.2d at 810). Hardy claims Dr. Ghosh cannot argue he believed his actions were legitimate because he "denied and delayed reasonable care" for Hardy, R. 257 at 5, but the record does not support that contention. Dr. Ghosh treated Hardy in some capacity on various occasions, *see* R. 154; R. 174, and that easily distinguishes this case from *Cobidge*, where the defendants "did nothing" in the face of obvious signs and symptoms that the decedent was suffering from a severe medical ailment. *See id.* at 871. Hardy has not put forth any evidence to suggest Dr. Ghosh had objectives in mind during his treatment of Hardy that were inconsistent with, or contrary to, his desire to properly treat Hardy's ailments.

Hardy attempts to satisfy the third factor in determining whether conduct is "extreme and outrageous"—whether the defendant was aware the plaintiff was peculiarly susceptible to emotional distress, *see Franciski*, 338 F.3d at 769; *McGrath*, 533 N.E.2d at 811—but the Court is not convinced this factor falls heavily in his favor or outweighs the Court's findings on the others. The record does not contain a particular factor or combination of factors that strongly supports a determination that Hardy was "peculiarly susceptible to emotional distress." *Cf., e.g.*, *Lujano v. Town of Cicero*, 691 F. Supp. 2d 873, 886 (N.D. Ill 2010) ("[I]it is significant that [the plaintiff] was pregnant for part of the period during which the alleged harassment took place."); *McGrath*, 533 N.E.2d at 812 (noting that the defendant's "conduct persisted despite the alleged fact that defendants had reason to believe that plaintiff might well be susceptible to heart disease, and even after

16

plaintiff in fact had a severe heart attack"); *Pavilon v. Kaferly*, 561 N.E.2d 1245, (Ill. App. Ct. 1st Dist. 1990) (explaining that the defendant was a trained psychotherapist and knew the plaintiff was undergoing psychotherapy at the time of the IIED conduct alleged). None of Hardy's ailments, individually or in the aggregate, indicate the same level of pain, discomfort, or exigency as exhibited in *Cobidge* or any of the other cases in which this element has been satisfied.[8] *See Cobidge*, 752 F. Supp. 2d at 871-72. Hardy's barebones assertion in his response to the motion that he "suffers from depression and is bipolar" is insufficient. R. 257 at 6. And although it may be true that Hardy and the decedent in *Cobidge* both made "repeated demands for medical care and claims of pain," *see id.* at 5, the Court does not find the cases similar enough so as to dictate the same result. In short, the conduct in *Cobidge* elicits the "Outrageous!" response; the conduct here does not. *Cf. Hearon v. City of Chi.*, 510 N.E.2d 1192, 1195 (Ill. App. Ct. 1st Dist. 1987) ("Neither the act of failing to notify [the plaintiff] as to the death and subsequent disposition of her husband's body nor the request of [the plaintiff] to later view the body after it had been exhumed could be considered as conduct that goes beyond all possible bounds of decency.").

For completeness, the Court will quickly address the second and third elements of an IIED claim. The second element has been explained as follows: "Liability extends to situations in which there is a high degree of probability that

---

[8] The Court acknowledges that the fact the prisoner in *Cobidge* eventually died is ultimately irrelevant as to whether the conduct preceding the death was "extreme and outrageous."

17

severe emotional distress will follow and the actor goes ahead in *conscious disregard* of it." *Public Fin. Corp. v. Davis*, 360 N.E.2d 765, 768 (Ill. 1976) (emphasis added). Hardy has not put forth sufficient evidence for a jury to conclude Dr. Ghosh "consciously disregarded" Hardy's medical ailments. The evidence as summarized, at most, illustrates that Dr. Ghosh may have been deliberately indifferent. *See* R. 215. And regarding the third element for an IIED claim, which focuses on the severity of the emotional distress suffered, the Court does not believe a reasonable jury could find in favor of Hardy on this element either. It has been explained that "[t]he law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it." *Honaker*, 256 F.3d at 495 (quoting *Welsh v. Commonwealth Edison Co.*, 713 N.E.2d 679, 684 (Ill. App. Ct. 1st Dist. 1999)). Such a situation is not present here. The treatment given and the injuries at issue, as thoroughly discussed in the Court's prior summary judgment order, *see* R. 215, are somewhat common to countless individuals on a daily basis. They are neither extreme nor particularly severe, considered individually or together, when compared to the conduct courts have found actionable for IIED. *Cf. Cobidge*, 752 F. Supp. 2d at 870-73; *Calumet City*, 641 N.E.2d at 506-09; *Kolegas*, 607 N.E.2d at 212; *Honaker*, 256 F.3d at 492.

To the extent Hardy claims he was not given an adequate opportunity to respond to the motion due to the time constraints of an impending trial, the Court does not believe any further briefing or responses would add to the record. Hardy was required to put forth evidence to demonstrate there was a genuine issue of

18

material fact during the Court's initial summary judgment determination regarding the deliberate indifference claims. The parties thus developed a full and complete record for that determination, which the Court considered in full in reaching its conclusions here. The bar for an IIED claim is higher, but both are elevated standards, *see Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010) ("Deliberate indifference is intentional or reckless conduct, not mere negligence."), and the Court is convinced there is no new information Hardy could proffer now that would not have been put forth for the initial summary judgment motion.

In summary, the Court, having considered the entire record before it, concludes that a reasonable jury could not find in favor of Hardy on his IIED claim against Dr. Ghosh. And with that conclusion, any IIED claim against Wexford premised on respondeat superior would likewise fail, even if the Court interpreted Hardy's Third Amendment Complaint as sufficiently pled or if Hardy were granted leave to amend his complaint.

## CONCLUSION

For the foregoing reasons, the Court grants the Defendants' Motion for Judgment as a Matter of Law with Regard to Plaintiff's Intentional Infliction of Emotional Distress Claim pursuant to Federal Rules of Civil Procedure 12(c) and 56.

ENTERED:

_____
Honorable Thomas M. Durkin
United States District Judge

Dated: September 20, 2013