# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| NEDRICK J. HARDY, SR., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| PARTHA GHOSH, | )   Case No.: 1:10-cv-05921 |
| | ) |
| | )   Judge Thomas M. Durkin |
| | ) |
| Defendant. | ) |

## PLAINTIFF'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW

NOW COMES, Plaintiff Nedrick J. Hardy, Sr. ("Mr. Hardy"), by his counsel, Kirkland & Ellis LLP, hereby renews his motion for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(b), which he initially raised at trial. (Tr. at 1219:11-24).[1]  Based on the evidence presented at trial, Defendant Dr. Partha Ghosh violated Mr. Hardy's constitutional rights by showing deliberate indifference to Mr. Hardy's serious medical needs.  Therefore, Mr. Hardy is entitled to judgment as a matter of law because substantial evidence does not support the jury's verdict.  In support of this Motion, Mr. Hardy states as follows:

### I. FACTUAL BACKGROUND

#### A. Mr. Hardy's Requests for Medical Care

Mr. Hardy is an inmate at Stateville Correctional Center ("Stateville"), a maximum security prison in Crest Hill, Illinois. (Tr. 414:22-23).  Mr. Hardy has been there since 2000 and

---

[1] All references to "Tr." cite to the final trial transcripts in this lawsuit.

will not be released until 2053. (Tr. 415:1-2, 21-25). While at Stateville, Mr. Hardy complained of an injury to his right small finger, his right wrist and elbow, and a cavity and gum infection.

In order to request medical care at Stateville, Mr. Hardy has to follow a specific process. He may request medical care by submitting a sick call request, asking a medical technician for medical attention, writing letters and/or filing grievances. (Tr. 411:14-412:2, 456:8-11). In order to obtain adequate treatment for his injuries, Mr. Hardy followed this process. He wrote sick call requests, letters and grievances, and asked the medical technicians, nurses and physicians for medical care. (Tr. 520:12-15 ("I did everything that I possibly could that was in my power to do within the institution to try to get medical care, and none of it worked.")). After receiving medical care that was too little, too late, if at all, Mr. Hardy sued Dr. Ghosh, among other defendants, to receive adequate medical care for his right small finger injury, his right wrist and elbow, and a cavity and gum infection.

### B. Dr. Ghosh's Responsibilities for Medical Care at Stateville

Dr. Ghosh was the Medical Director at Stateville from 2004 until March 31, 2011. (Tr. 666:24-667:2). He worked for Wexford Health Sources, Inc. ("Wexford"), a private company, that contracted with the State of Illinois to provide medical care to inmates at Stateville and other correctional centers in Illinois. (Tr. 741:11-14; 757:18-21). Dr. Ghosh, as the Medical Director, was ultimately responsible for all medical care provided by Wexford at Stateville. (Tr. 671:9-15; Ex. 61 ("The medical director shall provide the overall supervision for clinical services at the correctional center."))[2] Dr. Ghosh was also responsible for reviewing and approving all referrals to outside hospitals or specialists. (Tr. 674:3-6, 676:11-677:4). As well, Dr. Ghosh had

---

[2] All references to "Ex." cite to the exhibits admitted by Plaintiff during trial.

the authority and the ability to refer inmates to a dentist and ensure that an inmate received emergency dental care. (Tr. 755:10-25).

### C. Mr. Hardy's Right Small Finger Injury

On August 26, 2010, Mr. Hardy's right small finger was jammed by a basketball. That same day, Mr. Hardy was seen by the Wexford physician assistant, Ms. Latanya Williams. (Ex. 46-510). She recommended an x-ray, splinting, pain medication, icing, elevation and a re-evaluation with Dr. Ghosh in two weeks. (*Id.*) Mr. Hardy received an x-ray (Ex. 46-654), but he did not see Dr. Ghosh until much later (Ex. 46-511). And although Mr. Hardy received a splint the same day as his injury, it was immediately taken away as contraband because Dr. Ghosh did not provide a medical permit. Mr. Hardy filed grievances seeking another splint and an MRI. (*See, e.g.*, Exs. 170-243, 170-245). When Mr. Hardy saw Dr. Ghosh 18 days later, on September 13, 2010, Dr. Ghosh described Mr. Hardy's injury as a "swan neck deformity" and Dr. Ghosh applied another splint (which got wet later that night). (Ex. 46-511; Tr. 513:20-23). Mr. Hardy sent more grievances asking to see Dr. Ghosh for his right small finger injury and informing him that the splint had gotten wet. (*E.g.*, Exs. 170-247, 170-249, 171-255, 179-268). Mr. Hardy testified that he was in pain, and his finger was throbbing. (Tr. 515:3-4, 518:16-19). Despite repeated requests for medical care, Mr. Hardy was not seen by Dr. Ghosh again for his right small finger until November 22, 2010—some 3 months after his injury, when Dr. Ghosh finally recommended an MRI. (Ex. 46-515). Unfortunately, it was too little, too late.

Mr. Hardy finally received a MRI on January 21, 2011—nearly five months later. (Tr. 515:5-7). The MRI showed that Mr. Hardy's finger was indeed injured; he had a torn ligament. When Dr. Ghosh finally sent Mr. Hardy to see an orthopedic specialist, Mr. Hardy's finger was deformed and had a 30 degree bend. (*See* Tr. 519:16-19). The UIC orthopedic specialist placed Mr. Hardy's right small finger in a "smiley cast" and ordered Mr. Hardy to return to UIC every

two weeks to replace the "smiley cast." (Tr. 643:4-25). However, even after the treatment by the orthopedic specialist, Mr. Hardy's right small finger is permanently deformed at a 20 degree bend because of the delay in receiving proper medical care. (Tr. 519:16-21).

**D.     Mr. Hardy's Right Wrist and Elbow Injury**

On June 4, 2009, Mr. Hardy's right wrist and arm were slammed into a six foot, steel door, weighing several hundred pounds. (Tr. 652:5-12). Mr. Hardy's wrist was swollen and throbbing with pain. Immediately, he requested medical attention; he sent a letter to Dr. Zhang. (DTX 13-29 ("Dr. Zhang could you please see me? I got my wrist & elbow slammed in a steel door & it now has my fingers numb & my elbow hurting really bad.")). On June 13, 2009, Mr. Hardy went to the infirmary and saw Dr. Zhang. (Ex. 44-1094). Dr. Zhang diagnosed Mr. Hardy as having a "right arm crush injury." (*Id.*) She indicated that there was swelling and a decreased range of motion and recommended an x-ray, Tylenol and icy-hot to decrease the inflammation and pain. (*Id.*) On June 22, 2009, Mr. Hardy saw Ms. Williams. (Ex. 44-1095). Although Mr. Hardy was in "excruciating pain" and his wrist was "swollen," Ms. Williams simply prescribed him Motrin, patient education with reassurance and heat. (*Id.*) On July 20, 2009, more than a month later, Mr. Hardy finally saw Dr. Ghosh, who ordered Mr. Hardy a wrist brace. (Ex. 46-483). It took more than three months for Mr. Hardy to receive the wrist brace, and after he did receive it, the wrist brace was taken away as contraband. (*See* Ex. 37-337 (indicating Mr. Hardy received the wrist brace on October 28, 2009, but it was taken away because it was considered contraband)).

While waiting to receive the wrist brace, Mr. Hardy wrote letters to Dr. Zhang and Dr. Ghosh, requesting an MRI and describing that his "fingers are still numb & [his] elbow is throbbing & hurting" him and his "wrist & elbow are killing [him]." (DTX 13-30, DTX 13-31, DTX 13-32). Mr. Hardy also wrote a grievance asking for the wrist brace. (Ex. 158-227 ("But

to this date I've yet to receive my wrist brace. I've written several notes 8/3/09, 8/21/09, 8/24/09 & talked to med-tech Sheay & Danny & even to the medical supply ofc. Hanley who's in charge of order the wrist brace . . . .")).

On November 23, 2009, when Mr. Hardy was seen by Ms. Williams for a left shoulder injury, Mr. Hardy informed her that his elbow was "killing [him]" and he could not bend it like he used to. (Ex. 46-497). After discussion with Dr. Ghosh, Ms. Williams referred Mr. Hardy to Dr. Ghosh for a follow up. (*Id.*) Ms. Williams did nothing more for Mr. Hardy's injury to his right wrist and elbow. Although Mr. Hardy saw Dr. Ghosh on December 3, 2009, Dr. Ghosh only ordered pain medication and no weightlifting. (Ex. 46-500). After Mr. Hardy's visit with Dr. Ghosh, Mr. Hardy wrote grievances requesting medical care for his right wrist and elbow and complaining of tingling and numbness in his fingers. (*E.g.*, Exs. 37-337, 134-432).

More than a year after his injury, Mr. Hardy was seen on June 12, 2010, by Dr. Zhang, who ordered more pain medication and physical therapy. (Ex. 46-505). When he did not receive physical therapy, Mr. Hardy wrote more grievances requesting medical care for his right wrist and elbow injury. (*See, e.g.*, Exs. 171-255, 171-259, 140-213). Although Mr. Hardy still has pain, numbness and tingling in his right wrist and elbow, he has never received the physical therapy that Dr. Zhang recommended or an MRI. (Tr. 494:19-23).

### E. Mr. Hardy's Cavity and Gum Infection

On July 20, 2009, Mr. Hardy started experiencing pain in his upper right tooth. He wrote grievances and letters asking to be seen by a dentist. (*E.g.,* Exs. 23, 158-301). On October 7, 2009, Mr. Hardy was finally seen by a Wexford dentist, Dr. Sherri Thomas, in the Health Care Unit ("HCU") at Stateville. (Tr. 756:8-13; 1002:18-23). Dr. Thomas noted that Mr. Hardy had cavities and recommended two fillings in Mr. Hardy's No. 2 and No. 3 molars. (*Id.*). Mr. Hardy was not seen by a dentist again until February 22, 2010—more than 7 months after he had first

5

started having pain in his tooth. During those 7 months, Mr. Hardy wrote letters to the dentists, Dr. Thomas and Dr. Jacqueline Mitchell-O'Shea, a dentist employed by the Illinois Department of Corrections ("IDOC"), and Dr. Ghosh seeking dental care. (*E.g.,* Exs. 20-22, 24-28). For instance, in his letters to Dr. Ghosh, Mr. Hardy pleaded:

- "I am in some serious pain. I can not bite down on that side, drink or let cold air get in there because it hurts even more than normal. Could you please either get me seen or . . . just remind them that I am still waiting on them to call me back to fill this cavity." (Ex. 20).

- "I also would like to ask if you would please put me in for the dentist, because my upper rt. tooth is hurting me. It hurts when I bit down on anything. I've written the dentist a few times asking to be seen but I've yet to be seen." (Ex. 21).

- "I am still waiting to be seen by the dentist for my tooth. I've written Dr. Thomas several times along with Dr. Mitchell asking & begging for them to fix my cavity that was found on 10/7/09. That was 4 months ago. I am in pain & ain't being given nothing for it nor have I been seen since Dr. Thomas found the cavity 4 months ago." (Ex. 22).

On February 22, 2010, more than 7 months later, Dr. Thomas finally filled Mr. Hardy's cavity, but improperly. (Tr. 502:4-503:17, 998:24-999:2; Ex. 45-38). Mr. Hardy's gums swelled up, he developed a fever, and he was in pain. (Tr. 502:12-20). Seeking more dental care, Mr. Hardy submitted a grievance on May 30, 2010, stating it hurt to brush his teeth and drink hot or cold beverages. (Ex. 37-369). On June 10, 2010, Mr. Hardy returned to the dentist. (Tr. 999:14-19; Ex. 45-38). At this visit, Dr. Shappo, noted: "Painful tooth broke to touch. Temperature sensitive." (*Id.*) Dr. Shappo prescribed antibiotics and ordered Mr. Hardy to return to the dentist on June 22, 2010. (*Id.*) On June 22, Dr. Shappo provided Mr. Hardy with antibiotics and pain medication and rescheduled Mr. Hardy for June 29, 2010. (Tr. 1000:10-22; Ex. 45-38). On June 29, Dr. Shappo removed the infected filling and replaced it with a medicated filling. (*Id.*) Despite the fact that Mr. Hardy sent Dr. Ghosh letters seeking dental care, Dr. Ghosh did nothing to ensure Mr. Hardy received it. As a result, Mr. Hardy endured 11 months of unnecessary pain.

6

## II. LEGAL STANDARD

Rule 50(b) of the Federal Rules of Civil Procedure permits the Court to "direct the entry of judgment as a matter of law." Fed. R. Civ. P. 50(b)(3). Courts review the evidence and all reasonable inferences in a light most favorable to the non-moving party, and they do not make credibility determinations or weigh the evidence. *Cobige v. City of Chicago*, 752 F. Supp. 2d 860, 864 (N.D. Ill. 2010), *aff'd in part*, 651 F.3d 780 (7th Cir. 2011) (affirming jury verdict of liability of police officers for failure to provide medical care to arrestee under § 1983 claim). "In deciding whether judgment as a matter of law is appropriate, courts must consider the totality of the evidence to determine whether the jury was presented with a 'legally sufficient amount of evidence from which it could reasonably derive its verdict.'" *Id.* (quoting *Massey v. Blue Cross–Blue Shield of Ill.*, 226 F.3d 922, 924 (7th Cir. 2000)). "The standard for granting summary judgment is the same as the standard for granting judgment as a matter of law." *HK Systems, Inc. v. Eaton Corp.*, 553 F.3d 1086, 1088-1089 (7th Cir. 2009).

## III. ARGUMENT

### A. The Undisputed Evidence at trial shows Mr. Hardy is Entitled to Judgment as a Matter of Law Because Mr. Hardy was Harmed by Dr. Ghosh's Deliberate Indifference to Mr. Hardy's Serious Medical Needs.

Based on the evidence Mr. Hardy presented at trial, there was not a legally sufficient evidentiary basis to find for Dr. Ghosh. Mr. Hardy presented irrefutable evidence that: 1) he had serious medical conditions; 2) Dr. Ghosh was aware of these serious medical conditions; 3) Dr. Ghosh consciously failed to take reasonable measures to deal with the risks of serious medical harm to Mr. Hardy; and 4) Dr. Ghosh's conduct caused harm to Mr. Hardy. Because the evidence at trial supports no other legal conclusion, this Court should grant Mr. Hardy's Renewed Motion for Judgment as a Matter of Law.

1. Mr. Hardy had serious medical conditions.

Mr. Hardy presented irrefutable evidence that he suffers from serious medical conditions. A serious medical condition is "a condition that a doctor says requires treatment, or something so obvious that even someone who is not a doctor would recognize it as requiring treatment." (Dkt. No. 274, Jury Instructions at 21). *Accord King v. Kramer*, 680 F.3d 1013, 1018 (7th Cir. 2012). A serious medical need exists "where the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." *King*, 680 F.3d at 1018.

Case law instructs that a dislocated finger and a cavity and gum infection are serious medical conditions. *See id.* (giving as examples of medical conditions that met the objective prong of a deliberate indifference claim "a dislocated finger, a hernia, arthritis, heartburn and vomiting, a broken wrist, and minor burns"); *Roe v. Elyea*, 631 F.3d 843, 861 (7th Cir. 2011) (same). *See also Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010) ("Tooth decay can constitute an objectively serious medical condition because of pain and the risk of infection."); *Board v. Farnham*, 394 F.3d 469, 480-81 & n.4, 482-83 (7th Cir. 2005) (collecting cases); *Harrison v. Barkley*, 219 F.3d 132, 137 (2d Cir. 2000) (tooth cavity presented serious medical condition). Accordingly, there is no question that Mr. Hardy's injury to his right small finger and cavity and gum infection are serious medical conditions.[3]

---

[3] For further support, Mr. Hardy's medical complaints were diagnosed by a doctor as mandating treatment, and therefore, are serious medical conditions. Dr. Ghosh diagnosed Mr. Hardy as having a "swan neck deformity of right little finger" and prescribed him pain medication, gave him a splint and eventually referred Mr. Hardy to an orthopedic specialist. (Exs. 46-511, 46-515, 75-368, 75-369 and 75-371). As well, Dr. Sherri Thomas, a former Wexford dentist at Stateville, diagnosed Mr. Hardy as having cavities and ordered two fillings, and Dr. Sappho, a dentist at Stateville, indicated that Mr. Hardy had a gum infection and prescribed pain medication, antibiotics, and a medicated filling. (Ex. 45-38 and Tr. 998–1000, 1002 (Dr. Jacqueline Mitchell-O'Shea describing dental visits and Mr. Hardy's cavities and infections)). In light of these diagnoses, no reasonable jury could find that Mr. Hardy did not suffer from serious medical conditions.

It is also undisputed that Mr. Hardy's injury to his right wrist and elbow is a serious medical condition, which was diagnosed by Dr. Liping Zhang, a former Wexford physician at Stateville, as a "crush injury" to his right wrist and elbow. (Ex. 44-1094). Dr. Zhang prescribed pain medication and ultimately referred Mr. Hardy to physical therapy. (Exs. 44-1094, 46-505). Dr. Ghosh also prescribed Mr. Hardy pain medication. (Ex. 46-500). Therefore, no reasonable jury could find that Mr. Hardy did not suffer from serious medical conditions.

2. <u>Dr. Ghosh was aware of Mr. Hardy's serious medical conditions.</u>

Not only did Mr. Hardy have serious medical needs—he also presented undisputed evidence that Dr. Ghosh was aware of his serious medical conditions. For instance, regarding Mr. Hardy's injury to his right small finger, the evidence showed that: Dr. Ghosh testified that he was present at the initial examination on August 26, 2010, (Tr. 913:14–21); Ms. Williams testified she consulted with Dr. Ghosh as to the proper treatment for Mr. Hardy's injury, (Ex. 46-510; Tr. 255:2-17); Dr. Ghosh signed and verified that he reviewed the x-ray report on September 7, 2010, (Ex. 46-654, Tr. 909:18-23); Dr. Ghosh personally examined Mr. Hardy on September 13, 2010 and November 22, 2010, (Exs. 46-511, 46-515); Dr. Ghosh obtained approval for Mr. Hardy to go to UIC for an MRI and to be seen by an orthopedic specialist, (Exs. 46-550, 75-368, 75-369 and 75-371); and Jerry Baldwin, testified that he discussed with Dr. Ghosh several grievances relating to Mr. Hardy's injury to his right small finger, (*e.g.*, Exs. 170-249, 175-255, 171-259; Tr. 342:3-7, 346:4-18).

Similarly, with respect to Mr. Hardy's injury to his right wrist and elbow, the evidence demonstrated that Dr. Ghosh was personally involved in and aware of Mr. Hardy's complaints. For example: Dr. Ghosh signed and verified that he reviewed the x-ray report on June 18, 2009, (Ex. 44-1110); Dr. Ghosh ordered Mr. Hardy a wrist brace on July 20, 2009, (Ex. 46-483); after speaking with Dr. Ghosh, Ms. Williams referred Mr. Hardy to Dr. Ghosh for follow up care for

9

Mr. Hardy's right elbow, (Ex. 46-497; Tr. 245:8-20); Dr. Ghosh personally examined Mr. Hardy on December 3, 2009, (Ex. 46-500); Mr. Baldwin testified that he discussed with Dr. Ghosh grievances relating to Mr. Hardy's right wrist and elbow injury, (*e.g.*, Ex. 171-259; Tr. 344:14-24); and Mr. Hardy sent Dr. Ghosh letters seeking medical care, including an MRI, and insisting his "wrist and elbow are killing [him]" and he has "numbness in [his] fingers." (DTX 13-31, DTX 13-32).

Concerning, Mr. Hardy's cavity and gum infection, Mr. Hardy sent Dr. Ghosh several letters seeking dental care. (Exs. 20–22). But, Dr. Ghosh's, as a matter of practice, did not pick up his own institutional mail; he did not receive or review letters or grievances from inmates unless they were brought to his attention. (Tr. 780:10-18). Dr. Ghosh, however, as a matter of law, cannot turn a blind eye and shut his eyes for fear of what he might learn from the grievances and letters. This is deliberate indifference. (*See* Dkt. No. 274, Jury Instructions at 22).

Therefore, the evidence presented at trial demonstrates that Dr. Ghosh was aware of Mr. Hardy's serious medical conditions.

### 3. Dr. Ghosh consciously failed to take reasonable measures.

The undisputed evidence at trial also proves that Dr. Ghosh failed to take reasonable measures to deal with the risk of serious medical harm to Mr. Hardy. "In deciding whether Defendant failed to take reasonable measures, you may consider whether it was practical for him to take corrective action." (Dkt. No. 274, Jury Instructions at 22). Here, Dr. Ghosh failed to take reasonable measures to address Mr. Hardy's right small finger injury, right wrist and elbow injury and his cavity and gum infection.

#### a. Right Small Finger Injury

It is undisputed that three weeks after Mr. Hardy's right small finger was jammed by a basketball, Dr. Ghosh noted that Mr. Hardy had a "swan neck deformity." Yet, Dr. Ghosh

merely splinted Mr. Hardy's finger and prescribed pain medication. He did not order an MRI, refer Mr. Hardy to a specialist or even ask Mr. Hardy to return in a week to document whether treatment was progressing. Given the seriousness of Mr. Hardy's injury and the ease of treatment (*i.e.*, referring Mr. Hardy to a specialist and ordering Mr. Hardy an MRI), the delay in providing Mr. Hardy with adequate medical care to treat his right pinky injury is inexcusable. *See Berry*, 604 F.3d at 441 ("A significant delay in effective medical treatment also may support a claim of deliberate indifference, especially where the result is prolonged and unnecessary pain."); *Flournoy*, 881 F. Supp. 2d at 987 ("The length of delay that is tolerable depends on the seriousness of the condition and the ease of providing treatment."). (*See also* Dkt. No. 274, Jury Instructions at 22 ("In deciding whether Defendant failed to take reasonable measures, you may consider whether it was practical for him to take corrective action.")).

b. Right Wrist and Elbow Injury

Dr. Ghosh's "choice of the 'easier and less efficacious treatment' for an objectively serious medical condition . . . amount[s] to deliberate indifference for purposes of the Eighth Amendment." *Berry*, 604 F.3d at 441; *Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006) (stating that "medical personnel cannot simply resort to an easier course of treatment that they know is ineffective"); *Greeno v. Daley*, 414 F.3d 645, 655 (7th Cir. 2005) (noting that persistence in a course of treatment 'known to be ineffective' violates the Eighth Amendment); *see also Edens v. Larson*, 110 Fed. Appx. 710, 714-15 (7th Cir. 2004).

Here, Mr. Hardy submitted grievances asking for medical care to treat his right wrist and elbow injury, and he returned to the health care unit on numerous occasions for pain, tingling, and numbness in his right wrist and elbow. Nonetheless, Dr. Ghosh continued to only prescribe pain medication. To continue to only provide pain medication, after Mr. Hardy complained for months and years, is unreasonable and shows deliberate indifference. *See Greeno*, 414 F.3d at

11

655 ("Likewise, a jury could find deliberate indifference from Dr. Daley's refusal over a two-year period to refer Greeno to a specialist or authorize an endoscopy."); *see also Rice v. Walker*, No. 06-3214, 2010 WL 1050227, at *8 (C.D. Ill. Mar. 16, 2010) ("A fact finder could infer that Defendants were aware of Plaintiff's serious medical need, and knew that the treatment he was receiving was woefully inadequate, especially in light of Plaintiff's continued complaints and repeated visits to the health care unit.").

Moreover, Dr. Ghosh knowingly adhered to an easier method to treat Mr. Hardy's right wrist and elbow injury that he knew was ineffective. Dr. Ghosh did nothing to examine or identify the source of Mr. Hardy's numbness and tingling, despite knowing that numbness and tingling may be a sign of nerve damage. (Tr. 843:12-844:14). Yet, he rejected the obvious alternative of referring Mr. Hardy to a specialist or even referring Mr. Hardy to UIC to obtain an MRI. In fact, Dr. Ghosh did not even authorize Mr. Hardy to obtain an MRI on his right wrist and elbow at the same time that he was receiving one on his right small finger. (Tr. 902:9-903:11). It is hard to imagine that a doctor seeing a civilian patient would respond in this way to persistent complaints of pain, numbness and tingling over a period of four years. *See Berry*, 604 F.3d at 442. Put simply, Mr. Hardy made a modest request for treatment. Dr. Ghosh's "obdurate refusal to alter [Mr. Hardy's] course of treatment despite his repeated reports that" it was ineffective leads to no other conclusion but Dr. Ghosh was deliberately indifferent. *See id.* (quoting *Greeno*, 414 F.2d at 654); *see also Ford v. Wexford Health Sources, Inc.*, No. 12 4558, 2013 WL 474494, at *5 (N.D. Ill. Feb. 7, 2013).

        c.      <u>Cavity and Gum Infection</u>

Although Dr. Ghosh cannot be held liable on a theory of respondeat superior, it is sufficient to show that Dr. Ghosh "strongly suspected that things were not as they seemed, yet

shut his eyes for fear of what he would learn, you may conclude that he was deliberately indifferent." (Dkt. No. 274, Jury Instructions at 22).

Here, there is evidence that Dr. Ghosh knew of the conduct causing the constitutional violation but shut his eyes for fear of what he would learn. Dr. Ghosh admitted that he continued a practice of refusing to read institutional mail or grievances that were sent to him by inmates. (Tr. 780:10-18). This practice prevented Mr. Hardy from receiving the dental care that he requested. In fact, Dr. Ghosh's refusal to read institutional mail from Mr. Hardy resulted in a substantial and unnecessary delay in the treatment of Mr. Hardy's cavity and gum infection. (Tr. 787:20-788:5). The evidence and Mr. Hardy's steady complaints of pain indicate that the delay unreasonably prolonged Mr. Hardy's pain suffering. *See Berry*, 604 F.3d at 442 ("The delay in this case, however, was neither minimal nor justified by Berry's status as a prisoner. Berry was forced to endure nearly two months of serious pain despite the availability of an obvious treatment–a simple dentist visit–that Berry had specifically requested numerous times.").

### 4. Dr. Ghosh's conduct caused harm to Mr. Hardy.

Mr. Hardy presented evidence demonstrating that he would not have been harmed, or would have suffered less harm, but for Dr. Ghosh's deliberate indifference.

In particular, for his right small finger injury, Mr. Hardy testified that from September 13, 2010, when he first saw Dr. Ghosh for the injury, to March 29, 2011, when he received the smiley cast from UIC, he was in pain and his finger was "throbbing day in and day out." (Tr. 518:16-19). Similarly, Dr. Alpert opined that Mr. Hardy endured pain because of the injury and the delay in providing proper treatment. (Tr. 1048-24-1049:12). In fact, not only was Mr. Hardy in pain, but the delay in sending Mr. Hardy to UIC to see an orthopedic specialist, caused Mr. Hardy permanent damage: Mr. Hardy's right small finger is permanently deformed at a 20 degree bend. (Tr. 519:16-21).

For Mr. Hardy's right wrist and elbow, he still experiences numbness and tingling, pain and a decreased range of motion. (Tr. 494:15-18). Although he injured his right wrist and elbow more than four years ago, Mr. Hardy never received the physical therapy that Dr. Zhang prescribed or an MRI. (Tr. 494:19-23). Indeed, Dr. Alpert testified: "He didn't get any physical therapy. . . . That numbness and tingling is extremely uncomfortable, extremely painful." (Tr. 1119:8-16).

Moreover, for Mr. Hardy's cavity and gum infection, he testified at length that he was in pain and had trouble brushing his teeth and drinking hot and cold liquids. (*E.g.*, Tr. 502:12-20; Exs. 20–22). Even the dentist, Dr. Shappo noted: "Painful tooth broke to the touch. Temperature sensitive." (Ex. 45-38). Mr. Hardy endured more than 11 months of unnecessary pain due to Dr. Ghosh's refusals to take reasonable measures to obtain dental care for him. Therefore, it is undisputed that Dr. Ghosh's deliberate indifference caused Mr. Hardy harm.

Because Mr. Hardy's evidence supports no other legal conclusion except that Dr. Ghosh violated his Eighth Amendment right to receive adequate medical care for his serious medical needs, Mr. Hardy is entitled to judgment as a matter of law that he was harmed by Dr. Ghosh's deliberate indifference to his serious medical needs.

### B. The Undisputed Evidence at trial shows Mr. Hardy is Entitled to Damages as a Result of Dr. Ghosh's Deliberate Indifference to Mr. Hardy's Serious Medical Needs.

Mr. Hardy is further entitled to a judgment awarding damages as a result of Dr. Ghosh's deliberate indifference to his serious medical needs. Specifically, Mr. Hardy sought compensatory damages for the physical, mental and emotional pain and suffering that he experienced as a result of Dr. Ghosh's deliberate indifference. (*See* Dkt. No. 274, Jury Instructions at 26). At trial, Mr. Hardy presented evidence of the pain and suffering he endured as a direct result of Dr. Ghosh's deliberate indifference. *See Gentry*, 65 F.3d at 651; *see also*

*supra* at IV.A.4.  Accordingly, because the undisputed evidence at trial supports Dr. Ghosh's liability, Mr. Hardy is entitled to an award of damages.[4]

**WHEREFORE**, for the foregoing reasons, Mr. Hardy respectfully requests that this Court grant his renewed motion for judgment as a matter of law that Dr. Ghosh harmed Mr. Hardy due to Dr. Ghosh's deliberate indifference to Mr. Hardy's serious medical needs, or in the alternative a new trial, and such other and further relief as this Court deems appropriate.

Dated:  October 23, 2013                                    Respectfully submitted,

                                                       ***/s/ Sylvia Winston***
                                                       Craig Leavell
                                                       Sylvia Nichole Winston
                                                       Ferlillia V. Roberson
                                                      Justin Ryan Bernbrock
                                                      KIRKLAND & ELLIS LLP
                                                      300 North LaSalle Street
                                                      Chicago, Illinois  60654
                                                      312-862-2000 Telephone
                                                      312-862-2200 Facsimile
                                                      craig.leavell@kirkland.com
                                                      sylvia.winston@kirkland.com
                                                      ferlillia.roberson@kirkland.com
                                                      justin.bernbrock@kirkland.com

                                                     *Attorneys for Plaintiff Nedrick J. Hardy, Sr.*

---

[4] Mr. Hardy also sought punitive damages.  To the extent that this Court grants any portion of Mr. Hardy's renewed motion for judgment as a matter of law, or in the alternative a new trial, Mr. Hardy reserves his right to seek punitive damages.

**CERTIFICATE OF SERVICE**

I, Sylvia Winston, hereby certify that on the 23rd day of October, 2013, I caused a true and correct copy of the foregoing to be filed electronically. Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

Christopher E. Walter
Assistant Attorney General
General Law Bureau
100 West Randolph, 13th Floor
Chicago, Illinois 60601

James C. Vlahakis
Hinshaw & Culbertson, LLP
222 North LaSalle, Suite 300
Chicago, Illinois 60601

Illinois Department of Corrections
100 West Randolph, Suite 4-200
Chicago, IL 60601

*/s/ Sylvia Winston*